229 N.J. Super. 144 (1988)
550 A.2d 1281
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BRUCE TRAVERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 12, 1988.
Decided December 7, 1988.
*146 Before Judges ANTELL, HAVEY and BROCHIN.
Alfred A. Slocum, Public Defender, attorney for appellant (Marcia R. Steinbock, Designated Counsel, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Jessica S. Oppenheim, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BROCHIN, J.S.C. (temporarily assigned).
*147 Defendant Bruce Travers was convicted of three counts of death by auto in violation of N.J.S.A. 2C:11-5 and of operating a vehicle while intoxicated in violation of N.J.S.A. 39:4-50. For the death by auto convictions, he was sentenced to three concurrent terms of five years' probation conditioned on 364 days of incarceration, with a 150-day period of parole ineligibility and, in addition, a penalty of $1750 payable to the Violent Crimes Compensation Board. For the conviction of driving while intoxicated, defendant was sentenced to a concurrent two-day period of detainment to be served pursuant to the Intoxicated Driver Resource Program, a fine of $250 and a surcharge of $100. His driver's license was suspended for a period to end concurrently with a 28-month period of suspension imposed by the Department of Motor Vehicles.
Mr. Travers has appealed his convictions, claiming that his constitutional protection against double jeopardy precluded his being tried concurrently for death by auto and for driving while intoxicated, that testimony admitted to prove the charge of driving while intoxicated prejudiced his trial for death by auto, that he was denied effective assistance of counsel, and that his sentence was excessive. We have considered all of these grounds. For the following reasons, we are of the opinion that they are without merit and we affirm.
At approximately 9:30 p.m. on January 29, 1985, a 1976 Chevette which defendant Travers was driving in the southbound lane of a two-lane roadway in West Milford, New Jersey, failed to round a curve of the road, crossed the center line into the northbound lane, and struck a tree located twelve feet beyond the outer edge of the roadway. The force of the impact buckled the frame of the automobile and forced the engine into the passenger compartment. Accident reconstruction experts testified that the defendant must have been driving at least fifty miles per hour on a section of the roadway posted for a speed of thirty miles per hour. The eighteen-year old defendant *148 was injured and his three passengers, two of whom were also eighteen years old and one who was twenty, were killed.
When the accident occurred, the defendant and his passengers were returning from New York, where the minimum drinking age at that time was nineteen and where the defendant and his passengers had been "partying" and "having a few drinks with friends." A truck driver who stopped to help shortly after the accident smelled alcohol as he approached the car. The police officers who arrived at the scene a few minutes later testified that the whole car had a very strong odor of beer, that a piece of a Budweiser six-pack had fallen out of the car when the floor was cut to extricate the passengers, and that they detected the odor of alcohol coming from the defendant's breath. An analysis of the defendant's blood taken approximately an hour after the accident showed a blood alcohol content of .15 percent.
Defendant's trial on the indictment for death by auto began before the court and jury on May 29, 1986. On June 2, 1986, after two State's witnesses had already testified, the prosecutor moved to try the complaint of operating a vehicle while intoxicated concurrently with the trial of the indictment. The prosecutor represented that the defendant had received all discovery relevant to the charge of driving while intoxicated and was aware of the State's intention to bring that charge to trial, but that, through inadvertence, he had omitted to make a formal statement at the commencement of trial.
The court inquired carefully of defendant's attorney whether Mr. Travers would be prejudiced because two State's witnesses had already testified. The defense attorney replied that he would not be. The court offered to recall the witnesses who had already testified to allow defendant further cross-examination. However, the defendant declined the offer and objected to the State's motion only on the ground that the trial of the complaint for driving while intoxicated was barred by the doctrine of double jeopardy because jeopardy had already attached. *149 The trial judge granted the State's motion and ruled that he, and not the jury, would decide the charge of driving while intoxicated and that any testimony pertinent only to that charge would be presented outside the presence of the jury.
If at the very commencement of the trial the State had formally announced its intention of trying the complaint of driving while intoxicated concurrently with the indictment for death by auto, defendant would have had no basis for any objection to that procedure. In fact, State v. DeLuca, 108 N.J. 98 (1987), cert. den. ___ U.S. ___, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987), has directed trial judges to proceed in that fashion:
By virtue of an annual cross-assignment order, Superior Court judges may hear municipal court cases in the cases in which they sit. Hence we believe that the appropriate solution is for both charges to proceed simultaneously. The judge will preside as a Superior Court judge over the trial of the death-by-auto action. The same judge will sit as a municipal court judge with respect to the DWI charge and base his or her decision on the proofs adduced in the course of the death-by-auto charge. If in the death-by-auto case the sole evidence of recklessness is defendant's intoxication, the jury's determination of that issue will preclude a conviction for the DWI charge. [Id. at 111.]
See N.J.S.A. 2C:1-8(b). When the court was asked and agreed to consider the testimony which had already been heard, together with the further evidence which would be introduced, for the purpose of deciding the charge of operating a motor vehicle while intoxicated, the defendant was not prejudiced.
It is true, of course, that in a criminal trial tried to a jury, jeopardy attaches when the jury is sworn, Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d. 24 (1978), and in a criminal case tried to the court jeopardy attaches when the first witness is sworn. Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d, 265, 274 (1975). However, a prerequisite to the operation of that rule is the termination of the former prosecution upon which the claim of double jeopardy is predicated. Justices Of Boston Municipal Court v. Lydon, 466 U.S. 294, 308-309, 104 S.Ct. 1805, 1813-14, 80 L.Ed.2d 311, 325 (1984). Similarly, the New Jersey Code of Criminal Justice explicitly requires termination of the former prosecution as a *150 condition for the operation of the double jeopardy doctrine. See N.J.S.A. 2C:1-9 and 10. Since the prosecution of defendant for death by auto had clearly not terminated when the court granted the State's motion for the concurrent trial of the driving while intoxicated complaint, that concurrent trial did not violate the principle of double jeopardy.
Defendant has not expressly argued that the convictions of death by auto and of driving while intoxicated merge for purposes of sentencing. However, merger for purposes of sentencing is sometimes presented as a consequence of the double jeopardy doctrine. "The constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) `it protects against a second prosecution for the same offense after acquittal. [(2) I]t protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishment for the same offense.'" Illinois v. Vitale, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228, 235 (1980) quoting from North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-665 (1969). See Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Consequently, we will consider whether merger was required in the present case.
When a sentence is challenged as constituting multiple punishment for the same offense, one or both of two tests may be applicable to determine whether the multiple punishment is barred by double jeopardy. The tests are those enunciated on the one hand by State v. Miller, 108 N.J. 112 (1987); Garrett v. United States, supra; and Missouri v. Hunter, supra, and on the other hand by State v. DeLuca, supra, and Illinois v. Vitale, supra.
Under Miller, Garrett and Hunter, the relevant inquiry is whether the legislature which enacted the two statutes under *151 which the defendant has been convicted intended both punishments to apply. In the absence of explicit direction in the statutory language, "The factor critical to the merger decision ... [is whether] different interests [are] protected by the statutes violated." State v. Miller, 108 N.J. at 118. The statute against death by auto and the statute against operating a vehicle while intoxicated do protect different interests. The former seeks to deter and punish recklessness, of which voluntary intoxication is a possible component; the latter is intended to deter and punish insobriety while operating a vehicle. The Miller test, therefore, did not prevent the trial court from imposing separate sentences for death by auto and for driving while intoxicated.
Under State v. DeLuca, supra, and Illinois v. Vitale, supra, the test to determine whether double jeopardy requires merger of the convictions for the two offenses is whether "in the death-by-auto case the sole evidence of recklessness is defendant's intoxication." State v. DeLuca, 108 N.J. at 111. If that is the only evidence, "the jury's determination of that issue will preclude a conviction for the DWI charge." Ibid. In the present case the evidence presented by the State supports a conviction for death by auto predicated either on the defendant's excessive speed or on his intoxication or on a combination of both factors. Accordingly, under either the Miller or DeLuca test, the convictions of death by auto and of driving while intoxicated did not merge for sentencing purposes.
Defendant makes two other arguments based upon the concurrent trial of the indictment for death by auto and the complaint for driving while intoxicated. First, he complains that a forensic chemist who testified for the State improperly "alluded to the legal threshold blood alcohol of .10 percent." The State responds that the chemist did not at any time make any reference in the presence of the jury to the statutory presumption based on blood alcohol level. The record corroborates the State's position. Without referring to the statutory presumption, the witness mentioned .10 percent blood alcohol *152 level, intending, as he told the judge outside the presence of the jury, to give an example of what a weight percentage means, that is that .10 percent implies a tenth of gram of alcohol in one hundred cubic centimeters of blood. The judge satisfied himself that the expert understood the prohibition against referring to the presumption in the presence of the jury, the jury was recalled and no reference to the presumption was made while the jury was present.
Secondly, defendant also objects to the admission of testimony by a police officer who described the defendant's obstreperous conduct at the hospital to which he was removed for treatment immediately after the accident. The defendant argues that that testimony was relevant only to the charge of driving while intoxicated and that his defense against the death by auto charge was therefore prejudiced by its being tried concurrently. However, the witness' description of Mr. Travers' behavior at the hospital and of the abusive language which the defendant used was material evidence from which the jury could have inferred his state of intoxication for the purpose of concluding, as it undoubtedly did, that the defendant's driving while in that state of intoxication contributed to the recklessness prohibited by N.J.S.A. 2C:11-5.
Because a detective had detected the odor of alcohol on the defendant, he followed Mr. Travers to St. Anthony's Hospital in Warwick, New York. At the hospital the detective was told that a warrant from a New York judge would be needed before the hospital would provide a blood sample. The detective reached a New York judge by telephone and the judge ordered a warrant to be issued authorizing blood to be drawn from the defendant to determine his blood alcohol level. When the police detective returned to St. Anthony's Hospital with the warrant, he discovered that the defendant had been transferred to Nyack Hospital in Nyack, New York. The detective thereupon took the warrant to Nyack Hospital and a blood sample was taken and turned over to the West Milford Police Department.
*153 Either the night of the accident, or the next morning, a police officer learned that a blood sample had been taken from the defendant at St. Anthony's Hospital for medical reasons before his transfer to Nyack Hospital. Because that sample was taken at a time closer to the accident than the sample obtained at the Nyack Hospital pursuant to the warrant, the sample obtained at St. Anthony's would provide a more accurate indication of the defendant's blood alcohol reading at the time of the accident. However, when the investigating police officer arrived at St. Anthony's hospital to retrieve the sample, he learned that it had already been turned over to the Passaic County Medical Examiner, who turned it over to the prosecutor.
In our opinion, the trial judge was correct in denying the defendant's motion to suppress the results of the tests on the blood samples. If New Jersey law had applied, the blood sample taken from the defendant at Nyack Hospital specifically for investigative purposes could have been obtained without a warrant. Schmerber v. California, 384 U.S. 757, 771-72, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908, 920 (1966); State v. Dyal, 97 N.J. 229, 238 (1984); State v. Woomer, 196 N.J. Super. 583 (App.Div. 1984); State, In Interest Of M.P.C., 165 N.J. Super. 131, 138 (App.Div. 1979). However, since the defendant was in the State of New York at the time, the police were required to act in accordance with New York procedure. Defendant has not attempted to demonstrate to us that the conduct of the police was contrary to New York law and we assume that it was not. See People v. Dantzig, 40 A.D.2d 576, 334 N.Y.S.2d 451 (1972). The blood sample taken at St. Anthony's hospital was taken solely for medical reasons and therefore under New Jersey law and apparently also under New York law, the State needed a warrant to obtain the sample or the results of testing it, State v. Dyal, 97 N.J. 229, 231 (1984), and the State did obtain a New York warrant.
We also reject defendant's argument that his federal and state constitutional rights were violated because his attorney's deficient performance prejudiced the outcome of his case. See *154 Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fritz, 105 N.J. 42 (1987). His attorney provided defendant with a vigorous and capable defense. Unfortunately for defendant, the evidence of defendant's guilt was overwhelming.
As his final point, defendant argues that the court erred because it should not have weighed the deaths of defendant's passengers among the aggravating factors for purposes of sentencing since homicide is an element of the crime of death by auto, N.J.S.A. 2C:11-5. Therefore, he contends, his sentence was excessive because the mitigating factors which should have affected sentencing outweighed the relevant aggravating factors and he should have been sentenced to community service rather than to imprisonment as a condition of probation. We disagree.
It is true, of course, that since homicide is an element of the offense of death by auto, a death which results from the defendant's criminal conduct cannot ordinarily be counted as an aggravating factor for purposes of sentencing. State v. Pavin, 202 N.J. Super. 255 (App.Div. 1985). However, the defendant in this case caused three deaths. He was therefore charged and convicted for three separate counts of death by auto, one for each of his victims. His sentence for each of those crimes was made concurrent with the others. Surely the trial court was entitled to consider, as it did, that the number of deaths which defendant caused was an aggravating factor.
Furthermore, the judge also considered the nature and circumstances of the accident itself, the gravity of the harm inflicted on the victims and upon their families, the need to deter the defendant and others from driving while intoxicated, particularly in the light of the strong public policy against drunk driving, and the risk, inferred from facts in the presentence report which were not denied by the defendant, that he was still not cognizant of his drinking problem and would be likely to repeat his conduct. Against these aggravating *155 factors, the court weighed the fact that the defendant had no prior record and, except for the crimes of which he had just been convicted, that he had led a law abiding life. Weighing these factors, the trial court determined that probation should be conditioned upon imprisonment for 364 days rather than upon community service. We cannot say that that conclusion could not reasonably have been reached upon a weighing of the relevant facts. But See State v. Pineda, 227 N.J. Super. 245 (App.Div. 1988).
Even though aggravating factors outweighed mitigating ones, the court evidently concluded that "having regard to the nature and circumstances of the offense and the history, character and condition of the defendant, ... his imprisonment [was not] necessary for the protection of the public...." N.J.S.A. 2C:44-1(e). Had it come to a contrary conclusion, imprisonment for between three and five years (See N.J.S.A. 2C:43-6), not a "split term" of 364 days as a condition of probation, would have been required. State v. Hartye, 105 N.J. 411, 417 (1987). A defendant sentenced to a prison term as a condition of probation may not be subjected to the parole ineligibility term authorized by N.J.S.A. 2C:43-6b. Id. at 419. However, the death by auto statute, N.J.S.A. 2C:11-5, contains its own provision for a minimum term. In its present form it provides that "any sentence imposed under this section shall include either a fixed minimum term of 270 days' imprisonment, during which the defendant shall be ineligible for parole, or a requirement that the defendant perform a community related service for a minimum of 270 days." N.J.S.A. 2C:11-5b. Consequently, the court's imposition of a minimum sentence in this case is not contrary to Hartye. Prior to an amendment of that statute effective March 27, 1985, the minimum term was 120, rather than 270 days. Since defendant's crime was committed January 29, 1985, the shorter minimum was applicable and the court's imposition of a 150-day minimum term was proper. *156 Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).
AFFIRMED.