**RONICA DESHAWN MILLER, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2015-0062
Supreme Court of the Virgin Islands
August 9, 2017

831

PETER J. LYNCH, ESQ., Lynch Law Office, St. Thomas, USVI, *Attorney for Appellant*.

SU-LAYNE U. WALKER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(August 9, 2017)

CABRET, *Associate Justice*. Ronica D. Miller ("Miller") appeals from the Superior Court's July 6, 2015 judgment, which imposed a longer sentence than that recommended in the plea agreement she negotiated with the People. Because the Superior Court relied on Miller's religion to impose a longer sentence in violation of Miller's First Amendment and Due Process Clause rights, we remand for resentencing.

832

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, the Office of the Virgin Islands Inspector General launched a criminal investigation into allegations that Rodney Miller ("Rodney"), Miller's husband and the former CEO of a local hospital, fraudulently obtained and embezzled funds from the hospital and unlawfully transferred those funds to his personal account. As a result of the investigation, Rodney was arrested and charged with violating the Criminally Influenced and Corrupt Organizations Act ("CICO"), V.I. CODE ANN. tit. 14, § 605, and several other sections of Title 14 of the Virgin Islands Code.

On November 18, 2008, the Superior Court issued a preliminary injunction freezing Rodney's personal accounts. The court also froze a credit union account owned by Miller, which contained $700,000 in alleged unlawfully transferred funds to be forfeited in the event of Rodney's criminal conviction. Miller violated the court's order by withdrawing approximately $400,000 from the credit union account between July 23, 2012, and August 30, 2012. In response, on October 22, 2012, the People of the Virgin Islands filed an information charging Miller with ten counts of acting as an accessory after the fact under title 14, section 12(a). After fleeing the Territory to avoid arrest for several months, she turned herself in to the police on March 20, 2014, and the Superior Court set bail. Unable to post bail, she remained in custody for approximately fifteen months before her sentencing hearing.

Although Miller initially pled not guilty to all charges at her arraignment, she ultimately entered into a plea agreement on January 29, 2015. The agreement provided that Miller would plead guilty to one count of acting as an accessory after the fact, and the People would recommend two years' incarceration with all but fifteen months suspended,[1] restitution in the amount of $143,558.95, and a $5,000 fine. On February 20, 2015, the Superior Court held a change of plea hearing and accepted Miller's guilty plea.

At the June 16, 2015 sentencing hearing, the People attempted to establish the amount Miller owed in restitution through the introduction

---

[1] Although the third amended plea agreement recommended a sentence of two years' incarceration with all but nine months suspended, the People intended for the plea agreement to give Miller credit for the fifteen months she served prior to sentencing.

of financial records from her credit union account. While reviewing the financial records with the Superior Court, the People explained:

> [People]: [W]hat had occurred is that [Miller] would transfer the funds to another account, and then purchase certain cashier's checks.... [W]ith this particular check, she then attempted to go in and cash it out ....
>
> The Court: So her intention was to cash this check?
>
> [People]: To cash it out. Because ... when you purchase a manager's check, as it was explained to me ... you can cash it out.... Even though it's made payable to someone else, if you are the purchaser you can come in and cash it out or deposit it.

Miller's trial counsel objected to the People's representations as being "incorrect" and "not the way banks work" and argued that it was improper for the People to "essentially testify to the [court]" without evidence or a witness from the bank. The court questioned the reliability of the People's statements regarding Miller's financial records, but believed that Miller's initial $600 withdrawal from the restrained credit union account "seemed to be some form of a test" to see if it was possible for Miller to access the restrained funds.

Before imposing a sentence, the Superior Court acknowledged information in the presentence report and sentencing memorandum, which noted Miller's background as a devout Christian with a Bachelor of Theology degree, an active member of the community, a licensed realtor, and a mother of three. Despite the People's recommendation of two years' incarceration with all but fifteen months suspended, restitution in the amount of $143,558.95, and a $5,000 fine, the Superior Court sentenced Miller to three years' incarceration with credit for time served, restitution in the amount of $144,085.52,[2] and court costs in the amount of $75. The court explained that it deviated from the recommendation in the plea agreement because Miller had already been in custody for approximately a year and three months, far exceeding the six-month maximum allowed under section 3711(a) of title 5. Moreover, the Superior Court found the People's sentence recommendation "to be too lenient, given [Miller's]

---

[2] The People adjusted the restitution amount upon further review of Miller's financial records. Miller did not dispute the new amount.

numerous violations of the [c]ourt's orders, with knowledge, with her intelligence, with her claims to Christianity and her theology degree, and the [c]ourt being in a position where it can only at this juncture issue a period of incarceration and restitution with no guarantee that restitution will ever be made." The Superior Court memorialized its sentence in a July 6, 2015 judgment. Miller filed a timely notice of appeal on July 10, 2015.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). "It is well established that in a criminal case, the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes" of appeal. *Fontaine v. People*, 62 V.I. 643, 647 (V.I. 2015). Because the Superior Court's July 6, 2015 judgment is a final judgment, this Court possesses jurisdiction over this appeal. *Fahie v. People*, 62 V.I. 625, 629 (V.I. 2015).

## III. DISCUSSION

On appeal, Miller argues that the Superior Court committed error when it allowed the People to offer testimonial evidence concerning her financial records, referenced her religion during sentencing, and imposed a sentence based on its misinterpretation of title 5, sections 3711 and 3721. We address each argument below.

### A. The People's Explanation of Miller's Financial Records

■ Miller first argues that the People's explanation of her financial records at the sentencing hearing amounted to testimonial evidence in violation of Miller's Confrontation Clause and Due Process Clause rights. We engage in "plenary review of all constitutional questions of law." *Rivera v. People*, 64 V.I. 540, 552 (V.I. 2016) (citation and internal quotation marks omitted). The Confrontation Clause provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause, however, does not apply at the sentencing stage of criminal proceedings. *United States v. Powell*, 650 F.3d 388, 393 (4th Cir. 2011) (collecting cases).

■■ Although the Confrontation Clause does not apply at sentencing, "[t]he admission of hearsay statements in the sentencing context is subject to the requirements of the Due Process Clause," *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007), and due process requires evidence to have "some minimal level of reliability." *Powell*, 650 F.3d at 393. At sentencing, the People called no credit union representative to testify, but the prosecutor made several hearsay representations to the Superior Court regarding the circumstances surrounding the transactions, including that it was Miller's intent to "cash [the check] out" and that "it was explained to [the People]" that the credit union allows checks payable to a third party to be cashed by the purchaser. But the Superior Court disregarded the prosecutor's comments surrounding the transactions because they did not have "any sufficient basis in reliability for [the court] to accept those statements . . . ." *See Manes v. State*, 2004 WY 70, 92 P.3d 289, 293 (Wyo. 2004) (affirming defendant's sentence where the court disregarded the prosecutor's unreliable statements). Nevertheless, Miller argues that even though the Superior Court said it did not rely on the statements of the People, the Superior Court's inference that the first $600 withdrawn from the restrained account "was some form of a test to see if [Miller] could take this money out" shows that the court was influenced by the unreliable statements of the People. But the Superior Court explained that this inference was "based upon the statements of the Presentence Report, which the parties . . . did not have any issue with." *See State v. Travers*, 229 N.J. Super. 144, 550 A.2d 1281, 1286 (1988) (concluding sentence was not unreasonable where judge based sentence on facts inferred from presentence report which were not denied by defendant). The presentence report indicates that Miller withdrew $600 from her credit union account, consistent with the court's explanation. Because the Superior Court disregarded the People's improper statements, it did not err. *See Brathwaite v. People*, 60 V.I. 419, 428 (V.I. 2014) (concluding that prosecutor's improper comments did not justify reversal where the record showed the judge properly disregarded the comments); *State v. Thompson*, 146 Wis. 2d 554, 431 N.W.2d 716, 720 (Ct. App. 1988) (affirming the lower court's sentence where the record and the statements of the judge show that the judge did not rely on improper statements of the prosecutor).

## B. The Superior Court's References to Miller's Religion

■ ■ Miller also argues that the Superior Court violated her First Amendment and Due Process Clause rights by imposing a longer sentence due to her religious affiliation. We review this claim only for plain error, however, because Miller forfeited her First Amendment and Due Process Clause arguments by failing to object to the court's religious references at sentencing.[3] *See Connor v. People*, 59 V.I. 286, 298 n.11 (V.I. 2013) ("Where a statute is violated — indeed, even where the Constitution itself is violated — an appellant must ordinarily establish each factor of the plain error test if he failed to raise his objection below."), *cert. denied*, 134 S. Ct. 793, 187 L. Ed. 2d 602 (2013); *Brown v. People*, 56 V.I. 695, 695 (V.I. 2012) ("[W]hen a criminal defendant fails to object to a Superior Court decision or order, this Court ordinarily only reviews for plain error, provided that the challenge has been forfeited rather than waived."). Under the plain error standard of review, 1) there must be an error, 2) that is plain, 3) that affects the defendant's substantial rights, and 4) that affects the fairness, integrity, or public reputation of judicial proceedings. *Webster v. People*, 60 V.I. 666, 672 (V.I. 2014); *Connor*, 59 V.I. at 297 (citing *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011)).

■ A trial court generally enjoys "broad discretion in fashioning a sentence within legislative parameters" so long as it satisfies constitutional requirements. *Brown*, 56 V.I. at 713; *see also State v. Rice*, 2016 SD 18, 877 N.W.2d 75, 83 (S.D. 2016) ("Within constitutional and statutory limits, the trial courts of this state exercise broad discretion when deciding the extent and kind of punishment to be imposed." (citation, emphasis, and internal quotation marks omitted)); *State v. Sweat*, 722 P.2d 746, 746 (Utah 1986) (recognizing that, where "constitutional safeguards of due process and procedural fairness are afforded," a trial court has the broad discretion to consider all information

---

[3] Although Miller immediately notified the Superior Court that she planned to appeal her sentence, "[t]o preserve an objection on appeal, a party must object on the specific grounds raised on appeal, and a general objection or an objection on other grounds will not suffice." *Yusuf v. Hamed*, 59 V.I. 841, 851 n.5 (V.I. 2013) (quoting *United States v. Gallo-Chamorro*, 48 F.3d 502, 507 (11th Cir. 1995)) (internal quotation marks omitted). Miller did not raise her First Amendment and Due Process Clause objections with specificity, and thus failed to preserve them for appeal. *See* V.I. APP. P. 4(h); 22(m).

that reasonably bears on the proper sentence). Although the trial court may consider a range of factors when sentencing, "the due process clause imposes some significant restraint to assure the essential fairness of the procedure by which a judge shall exercise discretion in fixing punishment within permissible limits." *Chciuk-Davis v. People*, 57 V.I. 317, 322 (V.I. 2012) (quoting *United States ex rel. Collins v. Claudy*, 204 F.2d 624, 628 (3d Cir. 1953)). Notably, the court's "[r]eliance on constitutionally impermissible factors" to sentence a defendant, including religion, "is a violation of a defendant's due process rights." *Torres v. State*, 124 So. 3d 439, 441 (Fla. Dist. Ct. App. 2013) (internal quotation marks omitted).

In this case, Miller cites to four instances in the sentencing hearing where the Superior Court noted that Miller is a Christian, a fact that appears extensively in the presentence report and sentencing memorandum:

> (1) "She does have a Bachelor of Theology, and a copy [of] the degree is attached to the Presentence Report from the New Life Theological Seminary."
>
> (2) "The defendant says or asserts that she is a Christian, though not any specific denomination. She regularly attends church."
>
> (3) "Interestingly enough, all of this occurred — when I say all of this, I'm referring to these withdrawals, occurred a little less than a year after she received her degree in theology."
>
> (4) "However, essentially, sentencing the defendant to less than a year and-a-half incarceration, the [c]ourt finds to be too lenient, given the numerous violations of the [c]ourt's orders, with knowledge, with her intelligence, with her claims to Christianity and her theology degree, and the [c]ourt being in a position where it can only at this juncture issue a period of incarceration and restitution with no guarantee that restitution will ever be made."

 The Superior Court's first three comments merely show that it acknowledged the contents of the presentence report and sentencing memorandum but do not show that the Superior Court relied on Miller's religion to impose a harsher sentence. *Chciuk-Davis*, 57 V.I. at 322 ("Acknowledgment by the trial court that it has considered the parties' arguments can be sufficient, in the context of the complete record in a given case, to satisfy an appellate court that the sentencing court has considered all aggravating and mitigating factors and has a reasoned basis

for exercising its own legal decision-making authority."); *People v. Reed*, 376 Ill. App. 3d 121, 875 N.E.2d 167, 174, 314 Ill. Dec. 657 (2007) (recognizing that, in order to remand for resentencing, the "defendant must show more than the mere mentioning of an improper fact").

██ However, the fourth comment by the Superior Court explained why it thought the prosecutor's recommendation was too lenient. The Superior Court listed Miller's "claims to Christianity and her theology degree" among several other aggravating factors, including "numerous violations of the Court's orders" and the fact that the court had "no guarantee that restitution [would] ever be made," before it deviated from the sentence recommended in the plea agreement and imposed a longer sentence of three years' incarceration with credit for time served and restitution. This was impermissible.

██ We first addressed the court's reliance on religious considerations in imposing a sentence in *Brathwaite*, where we concluded that the prosecutor's improper religious comments did not require reversal because "the Superior Court, when explaining the reasons for the sentence it ultimately imposed, did not reference the People's religion argument, reflecting that the judge properly disregarded the comments." 60 V.I. at 428. In contrast, the Superior Court's fourth comment here indicates that it used Miller's religious affiliation as an aggravating factor to justify a harsher punishment. The Superior Court erred because it went beyond permissibly acknowledging the facts included in the presentencing report and sentencing memorandum to impermissibly relying on Miller's religion to impose a harsher sentence. *See State v. Fuerst*, 181 Wis. 2d 903, 512 N.W.2d 243, 246 (1994) (recognizing that, although it is permissible to include religious beliefs in a presentence report so that the court may evaluate the "whole person," the court cannot impose a sentence based on defendant's religion).

██ ██ A court's error is plain if it is clear and obvious. *Malone v. People*, 53 V.I. 408, 417 (V.I. 2010). This Court has previously warned against the use of religion in the sentencing process. *Brathwaite*, 60 V.I. at 427-28. A defendant's religion constitutes an impermissible sentencing factor. *Ingram v. State*, 253 Ga. 622, 323 S.E.2d 801, 814 (1984) (religion cannot be a factor in sentencing); *People v. Gjidoda*, 140 Mich. App. 294, 364 N.W.2d 698, 701 (1985) (same); *Flanagan v. State*, 109 Nev. 50, 846 P.2d 1053, 1058 (1993) (same); *State v. Earls*, 234 N.C. App. 186, 758 S.E.2d 654, 659 (2014) (same). And the United States Supreme Court

839

thus has noted that it is error to "attach[ ] the 'aggravating' label to factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant . . . ." *Zant v. Stephens*, 462 U.S. 862, 885, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1993); *see also United States v. Johnson*, 374 Fed. Appx. 1, 2 (11th Cir. 2010) ("The religion of a defendant is a constitutionally impermissible sentencing factor."); *United States v. Torres*, 926 F.2d 321, 324 (3d Cir. 1991) ("Implicit in the broad discretion granted the sentencing judge, however, is the necessity that the information be reliable and not bear on such impermissible factors as race, religion, national origin . . . ."); *United States v. Bakker*, 925 F.2d 728, 740 (4th Cir. 1991) (remanding for resentencing where the court imposed a harsher sentence on religious grounds). "[I]t is expected that [the Superior Court] knows and applies settled law," and its failure to do so in this instance makes the court's error plain. *Webster*, 60 V.I. at 677 (citation and internal quotation marks omitted). The Superior Court thus committed a plain error by relying on Miller's religion to impose a harsher sentence.

█ Although the Superior Court committed a plain error, this Court still must determine whether the error was harmless or affected Miller's substantial rights under the third prong of the plain error analysis. *See Williams v. People*, 59 V.I. 1043, 1047 n.4 (V.I. 2013) (recognizing that "the harmless error standard is functionally equivalent to the third prong of the plain error test"); *Fahie v. People*, 59 V.I. 505, 516 n.5 (V.I. 2013) (explaining that "courts have held that the third part of plain error review involves the same inquiry as harmless error analysis") (collecting cases); *cf. Rawlins v. People*, 58 V.I. 261, 269 n.3 (V.I. 2013) (clarifying that, although both standards require similar inquiry, the government has the burden of proof under the harmless error standard, while the defendant has the burden under the plain error standard (citing *United States v. Olano*, 507 U.S. 725, 734-35, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)). Although religion is only one of several aggravating factors listed by the Superior Court, it did not indicate to what extent Miller's religion influenced her sentence. However, since any increase in sentence based on Miller's religion affects her substantial rights by "put[ting] a price upon the exercise of a fundamental constitutional right," we cannot conclude that the Superior Court's error was harmless. *See Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102, 106 (1977).

■ ■ We are also concerned that the Superior Court's reliance on Miller's religion to impose a harsher sentence calls into question the fairness, integrity, and public reputation of judicial proceedings. *See People v. Rademacher*, 2016 IL App (3d) 130881, 405 Ill. Dec. 719, 59 N.E.3d 12, 23 (2016) ("[A] sentencing hearing will be found fundamentally unfair where religion is a factor in the sentence imposed."); *Torres*, 124 So. 3d at 442 ("No one should be punished . . . merely because he or she may be a member of a particular religion."). Accordingly, we remand for resentencing because it is unclear whether the Superior Court would have imposed the same sentence without relying on Miller's religion. *See People v. Bourke*, 96 Ill. 2d 327, 449 N.E.2d 1338, 1340, 70 Ill. Dec. 734 (1983) ("Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing."); *Day v. State*, 560 N.E.2d 641, 643 (Ind. 1990) (concluding that the reviewing court should remand where it cannot be certain that the "permissible aggravators" would have led to the same result); *State v. Laffey*, 600 N.W.2d 57, 62 (Iowa 1999) ("The fact that the court also considered other, permissible factors in sentencing the defendant does not make the court's reliance on this impermissible consideration of no consequence.").

■ The People further argues that, even if the Superior Court did err, Miller invited the error because Miller invoked her religion "at every possible opportunity." This Court has held that "when a defendant, through his counsel, induces or encourages the Superior Court to commit an error, the invited error doctrine precludes that error from forming the basis for reversal on direct appeal." *Williams v. People*, 59 V.I. 1024, 1033 (V.I. 2013); *Powell v. People*, 59 V.I. 444, 465 (V.I. 2013) ("Generally, trial error which is induced, encouraged, acquiesced in, or consented to by defense counsel does not form a basis for reversal on appeal." (citation and internal quotation marks omitted)); *Fontaine v. People*, 56 V.I. 571, 583 (V.I. 2012) ("[T]he invited error doctrine precludes errors stemming from erroneous jury instructions proposed by a defendant's counsel from forming the basis for reversal."). Significantly, the invited error doctrine applies when the appellant induced the specific error by her affirmative action. *Williams*, 59 V.I. at 1033. The specific error here is the court's imposition of a harsher sentence, in part, because of Miller's "claims to Christianity." Although the presentence report and sentencing memorandum discuss Miller's theological training and involvement in the

church, it can hardly be argued that the mention of her religious affiliation invited an increased sentence based on her religion. *Cf. Phipps*, 54 V.I. at 548 n.3 (recognizing that jury instructions defendant submitted to the court did not invite error). Miller exercised her First Amendment right when she openly referenced her religion and we refuse to hold that she invited error in doing so. *See State v. Santos-Vega*, 299 Kan. 11, 321 P.3d 1, 10 (2014) ("[T]he invited error rule cannot be used as a pretext for the violation of a defendant's constitutional rights where there is no justification for so doing." (quoting *State v. Gadelkarim*, 256 Kan. 671, 887 P.2d 88 (1994), *overruled on other grounds by State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006))). "The free exercise of religion means, first and foremost, the right to believe and *profess* whatever religious doctrine one desires[.]" *Chittenden Town Sch. Dist. v. Vermont Dep't of Educ.*, 169 Vt. 310, 738 A.2d 539, 563 (1999) (emphasis added) (citations and internal quotation marks omitted). As a fundamental liberty, "religious expression [is] too precious to be either proscribed or prescribed by the [government]." *Lee v. Weisman*, 505 U.S. 577, 589, 112 S. Ct. 2649, 120 L. Ed. 2d 467 (1992); *see also Sherbert v. Verner*, 374 U.S. 398, 413, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963) (Stewart, J., concurring in the result) ("[N]o liberty is more essential to the continued vitality of the free society which our Constitution guarantees than is the religious liberty protected by the Free Exercise Clause explicit in the First Amendment and imbedded in the Fourteenth."). To accept the People's contention that Miller invited error by openly professing her religious beliefs is to punish her for that profession in violation of her First Amendment rights. *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15-16, 67 S. Ct. 504, 91 L. Ed. 711 (1947) ("No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance."). Accordingly, we reject the People's argument that Miller invited error by exercising her constitutionally protected right to profess her religious beliefs.

## C. Split Sentence Recommendation

▪ When sentencing Miller, the Superior Court explained that "a split sentence of incarceration and probation is not permissible under Title 5 Virgin Islands Code 3711(a)" because Miller served more time in custody than allowed under the split sentencing statute. Because Miller did not object at sentencing, we review for plain error. *See* V.I. R. APP. P. 4(h)

("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal."); V.I. R. APP. P. 22(m) ("Issues that were . . . not raised or objected to before the Superior Court . . . are deemed waived for purposes of appeal."); *Galloway v. People*, 57 V.I. 693, 709 n.8 (V.I. 2012) ("Rules 4(h) and 22(m), when read in tandem, simply adopt the plain error standard of review.").

 Miller argues that the court misinterpreted section 3711(a), and that as a result, she is entitled to resentencing. The People agrees that the Superior Court misinterpreted section 3711(a), but argues that Miller is not entitled to relief because the sentence imposed is within statutory limits. We disagree with the People because, even when the court imposes a sentence within statutory limits, the court commits error that warrants resentencing "when it refuses to consider viable sentencing options and thus fails to exercise its discretion." *Costin v. State*, 269 Ga. App. 632, 605 S.E.2d 73, 74 (2004) (remanding for resentencing where court imposed sentence within statutory limits based on a misinterpretation of a statute); *State v. Toyne*, 151 Idaho 779, 264 P.3d 418, 422 (Ct. App. 2011) (remanding for resentencing where court "misperceived the scope of its sentencing discretion" due to its misinterpretation of the sentencing statute even though sentence fell within statutory limits); *State v. Baldwin*, 66 N.C. App. 156, 310 S.E.2d 780, 782 (1984), *aff'd*, 310 N.C. 623, 313 S.E.2d 159 (1984) (remanding for resentencing where court imposed a minimum sentence based on its misinterpretation of a statute). Although Miller and the People agree that the Superior Court misinterpreted the sentencing statute, "[i]t is well established . . . that parties may not explicitly or implicitly stipulate to the law, and thus we must independently determine whether the Superior Court committed error." *Cantois v. People*, 61 V.I. 257, 260 (V.I. 2014) (citation and internal quotation marks omitted).

 " '[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent . . . directly resolving it.' " *Francis v. People*, 57 V.I. 201, 222 (V.I. 2012) (quoting *Murrell v. People*, 54 V.I. 338, 366 (V.I. 2010)). Although we have previously addressed illegal split sentencing, *Jackson-Flavius v. People*, 57 V.I. 716, 728-29 (V.I. 2012) (identifying types of illegal split sentences), we have not yet determined whether a trial court may impose a split sentence where the defendant already has served more than six months in presentence custody, the maximum term allowed under

section 3711. Because there was no precedent instructing the court to interpret section 3711 differently, the Superior Court did not commit plain error when it concluded that Miller was ineligible for split sentencing under section 3711. *See Murrell*, 54 V.I. at 366 (explaining that plain error must be "clear under current law").

 Nevertheless, we find it necessary to guide the Superior Court on its interpretation of section 3711, because we have decided to remand the case on different grounds and this issue is likely to recur on remand. *Fontaine*, 56 V.I. at 593 (providing guidance to the Superior Court when case was already remanded for new trial); *Smith v. Turnbull*, 54 V.I. 369, 374 (V.I. 2010) (considering "other issues that, while no longer affecting the outcome of the instant appeal, are likely to recur on remand" (citation and internal quotation marks omitted)). "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning." *Engeman v. Engeman*, 64 V.I. 669, 675 (V.I. 2016) (quoting *In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015)). The Virgin Islands Legislature has instructed that "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42; *Defoe v. Phillip*, 56 V.I. 109, 121 (V.I. 2012). Section 3711(a) provides, in relevant part:

> Upon entering a judgment of conviction of any offense against the laws of the Virgin Islands not punishable by life imprisonment, if the maximum punishment provided for such offense is more than six months, the [D]istrict [C]ourt or a Superior Court, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, *may impose a sentence in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period not exceeding six months* and that the execution of the remainder of the sentence be suspended and the defendant placed on probation for such period and upon such terms and conditions as the court deems best.

(emphasis added.) The "may impose" language gives the court discretion to impose a sentence greater than six months. *Shoy v. People*, 55 V.I. 919, 927 (V.I. 2011). The word "and" acts as a conjunction, making it necessary to interpret the words following "and" in combination with the first discretionary clause. *Reese Bros., Inc. v. United States*, 447 F.3d 229, 236 (3d Cir. 2006). In other words, the court is allowed to impose a sentence of more than

844

six months, but it must ensure that the defendant spends no more than six months of that sentence "confined in a jail-type institution." The literal interpretation of section 3711 creates two classes of criminal defendants: those who can post bail and avoid presentence confinement in excess of six months and those who cannot post bail and risk presentence confinement in excess of six months. The former class of defendants is eligible for a split sentence, but the latter class of defendants risks being ineligible for a split sentence if the sentencing hearing occurs more than six months after confinement.

 When construing a statute, "although literal interpretation of a statute is favored, the intention prevails over the letter, and thus no statute should be read literally if such a reading is contrary to its objective." *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) (quoting *Gov't of the V.I. v. Knight*, 989 F.2d 619, 626, 28 V.I. 249 (3d Cir.1993)) (brackets and internal quotation marks omitted). Accordingly, we avoid interpreting statutes in a way that would lead to unjust and absurd consequences that the Legislature could not have intended. *Id.* at 356, 359. Here, because the plain language of section 3711 leads to an unjust and absurd consequence in that one who is otherwise eligible for split sentencing and probation is made ineligible based solely on an inability to post bail, it is necessary to look beyond the plain language of the statute to determine the intention of the Legislature. *Id.* at 365.

 The Legislature enacted section 3711 in 1957, based on a section of the 1921 Codes that authorized a suspension of sentence for a period of two years.[4] 5 V.I.C. § 3711 (revision notes); *see also* 1921 Codes, Title IV, ch. 11, § 5. In lieu of the sentence suspension provision of the 1921 Codes, section 3711 adopted language similar to 18 U.S.C. § 3651 of the Federal Probation Act.[5] *Compare* 18 U.S.C. § 3651 (repealed 1984) *with* 5 V.I.C. § 3711 (revision notes). "When the Virgin

---

[4] Title IV, chapter 11 of the 1921 Codes provided in section 5 that:

> If at the time for passing a sentence it shall appear to the Judge that there is good reason to believe the person convicted will thereafter live a life free from crime, the Judge may order the execution of the sentence suspended during good behavior for a period of two years and if, thereafter, the person convicted shall conduct himself in any orderly manner and free from crime during the period of two years the sentence shall be deemed permanently suspended, but if such person shall fail therein he may be taken into custody at any time during the said period of two years and the sentence executed.

[5] 18 U.S.C. § 3651 provided in relevant part:

Islands Legislature adopts a statute that is identical or similar to one in effect in another [jurisdiction], Virgin Islands courts will typically adopt the original jurisdiction's construction of the statute prevailing at the time of its adoption." *Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 295-96 (V.I. 2014). Accordingly, the United States Supreme Court's pre-1957 interpretation of the federal statute guides our interpretation of the local enactment.[6] *Id.* And, in 1943, the United States Supreme Court explained that the purpose of 18 U.S.C. § 3651 was "to provide an individualized program offering a[n] . . . unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he abuse[s] this opportunity." *Roberts v. United States*, 320 U.S. 264, 272, 64 S. Ct. 113, 88 L. Ed. 41 (1943) (discussing the purpose of 18 U.S.C. § 3651 and related sections, collectively named the Probation Act). Guided by the United States Supreme Court's interpretation of the federal statute, we conclude that the Legislature intended for section 3711 to serve a similar purpose of providing an individualized sentence for the rehabilitation of offenders who would benefit from the oversight of a probation official more than institutional confinement. *Chciuk-Davis*, 57 V.I. at 322 (requiring courts to provide an individualized sentence). The Superior Court's literal interpretation of section 3711 offends this purpose, because it places greater importance on the offender's economic status than the offender's rehabilitative needs by precluding those who

---

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, if the maximum punishment provided for such offense is more than six months, any court having jurisdiction to try offenses against the United States, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may impose a sentence in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period not exceeding six months and that the execution of the remainder of the sentence be suspended and the defendant placed on probation for such period and upon such terms and conditions as the court deems best.

The Legislature adopted nearly identical language in 5 V.I.C. § 3711. It only departed from the statutory framework of 18 U.S.C. § 3651 to specify that section 3711 pertains to offenses "against the laws of the Virgin Islands" and that section 3711 empowers the "[D]istrict [C]ourt or a Superior Court" to impose a split sentence.

[6] United States Supreme Court cases that were decided post-1957 and other federal court cases that were decided before or after 1957 constitute persuasive authority. *Bryan*, 61 V.I. at 235.

cannot afford bail from receiving an individualized split sentence and probation even if they would benefit more from supervised guidance than institutionalization. *See State v. Richards*, 740 P.2d 1314, 1316 (Utah 1987) (recognizing that "the length of imprisonment cannot depend upon a person's economic status").

 Moreover, the statute governing the application of presentence custody credits, 5 V.I.C. § 3674, by its plain terms, only becomes operative after a defendant has been sentenced. Because the Superior Court considered Miller's presentence custody credits when imposing her sentence, section 3711 must be read in conjunction with section 3674. Section 3674 provides:

> Whenever a person is accused of an offense and bail is allowed and fixed pending trial, but by reason of poverty, he is unable to secure bondsmen and is therefore held in custody while awaiting trial, *and is thereafter sentenced to a term of imprisonment*, his term of imprisonment shall be reduced by the time already spent in custody from the time of the arrest to the time when sentence is rendered.

(emphasis added.) Section 3674 becomes effective when a person is accused of an offense and bail is allowed and fixed, the accused is unable to post bail and is held in custody, *and* the accused is sentenced to a term of imprisonment. 1 V.I.C. § 42; *Defoe*, 56 V.I. at 121. Once those conditions are met, the term of imprisonment is to be reduced by the time spent in custody. 5 V.I.C. § 3674. Nothing in the language of section 3674 indicates that the amount of time in presentence custody should preclude the availability of sentencing options for a defendant and such an interpretation would conflict with section 3674's purpose of putting defendants who cannot afford bail in the same position as those who can. *Accord People v. G.H.*, 230 Cal. App. 4th 1548, 179 Cal. Rptr. 3d 618, 622 (2014) (explaining that purpose of statute granting presentence custody credits is "to eliminate the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts" (citation and internal quotation marks omitted)); *State v. Tauiliili*, 96 Haw. 195, 29 P.3d 914, 918 (2001) (explaining that statute "granting presentence credit . . . seeks to place an in-custody criminal defendant who cannot afford to post bail in the same position as his counterpart with bail money"); *Nissel v. Pearce*, 307 Ore. 102, 764 P.2d 224, 225-26 (1988) ("Statutes giving credit for presentence time served were designed to ensure equal treat-

ment for indigent and non-indigent defendants."). Together, sections 3711 and 3674 ensure that a defendant's economic position does not operate to his prejudice.

▆▆▆ In order to effectuate the policy behind section 3711, we conclude that the Superior Court had the authority to impose a split sentence that provided for no more than six months' incarceration and to order that credit be given for the time Miller spent in presentence custody, thereby making Miller eligible for probation.[7]

## D. Restitution

▆▆▆ Miller also argues that the Superior Court mistakenly interpreted the law and acted in direct violation of title 5, section 3721 when it ordered Miller to pay $10,000 in restitution while incarcerated. Because she failed to raise this issue before the Superior Court, we review for plain error. *Brown*, 56 V.I. at 695. In support of her argument, Miller offers nonbinding authority from *Karpouzis v. Gov't of the V.I.*, 58 F. Supp. 2d 635, 41 V.I. 179 (D.V.I. App. Div. 1999), a single case decided by the Appellate Division of the District Court before this Court was established, which held that sentencing judges cannot order defendants to pay restitution from prison. However, Miller fails to point out that the Third Circuit Court explained that section 3721 does not contain any language "*prohibiting* an order of restitution for any reason — let alone for incarceration. [It] merely *authorize[s]* restitution if probation is ordered." *Gov't of the V.I. v. Marsham*, 293 F.3d 114, 117 (3d Cir. 2002) (emphasis in original); *see also Davis v. Gov't of the V.I.*, 222 F. Supp. 2d

---

[7] Miller's sentence was imposed on July 6, 2015 and she was released on parole on December 17, 2015. Our analysis would change if Miller had already served more than six months under the sentence imposed by the Superior Court because there is precedent in the federal circuit courts of appeal supporting the conclusion that a defendant who has already served more than six months under an original sentence is no longer eligible for split sentencing upon resentencing. *United States v. Olarte-Morales*, No. 92-5194, 1993 U.S. App. LEXIS 9130, at *10 (10th Cir. Apr. 15, 1993) (unpublished) (holding that court erred in imposing a split sentence in response to appellant's motion to reduce sentence where the appellant had already served more than six months for the original sentence); *United States v. Principato*, 717 F.2d 1313, 1314 (9th Cir. 1983) (explaining that imposition of split sentence was illegal after defendant already served more than six months under the original sentence); Advisory Committee Note, FED. R. CRIM. P. 35 (b) ("Should the reduction to a sentence of probation occur after the defendant has been incarcerated more than six months, this would put into issue the applicability of 18 U.S.C. § 3651.").

723, 727 (D.V.I. 2002) (recognizing that *Karpouzis* misinterpreted section 3721). We agree. When interpreting a statute, we look first to the plain meaning of the text used by the Legislature. *In re L.O.F*, 62 V.I. at 661. Section 3721 provides, in relevant part:

> *If the court places the person on probation, the court shall require restitution designed to compensate the victim's pecuniary loss resulting from the crime to the extent possible, unless the court finds there is substantial reason not to order restitution as a condition of probation.* If the court does not require restitution to be paid to a victim, the court shall state its reason on the record. The court may require that restitution be paid to an insurer or surety or government entity which has paid any claims or benefits to or on behalf of the victim. If the court does require restitution, it shall specify the amount.

(emphasis added.) The scope of section 3721 is narrow and only mandates that the court order restitution if a person is placed on probation. *Marsham*, 293 F.3d at 118. It does not prohibit the court from ordering restitution if a person is sentenced to a term of incarceration or in any other circumstance that might warrant an order of restitution. *Id.* The plain language of section 3721 simply does not support Miller's argument.

█ Furthermore, the CICO statute under which Miller was sentenced as an accessory after the fact requires that the Attorney General "vigorously advocate full and complete restitution" and that "the trial court, prior to the acceptance of a plea or after a verdict, but prior to the imposition of any sentence . . . shall not consider any matter in mitigation until full and complete restitution has been duly effected or a satisfactory explanation of why such restitution is impractical has been made to the court." 14 V.I.C. § 606(m). Virgin Islands law both permits and requires the Superior Court to order Miller to pay restitution notwithstanding Miller's incarceration. Accordingly, we conclude that the Superior Court's order of restitution is consistent with Virgin Islands law.

## IV. CONCLUSION

The Superior Court did not violate Miller's rights under the Confrontation Clause or commit plain error when it sentenced Miller under title 5, section 3721. Although we now conclude that Miller is eligible for split sentencing under title 5, section 3711, the Superior Court

did not commit plain error in concluding that she was ineligible because there was no clear interpretation of the split sentencing statute to guide the court. However, we vacate the portion of the July 6, 2015 judgment that sentences Miller and remand with instructions to resentence her in accordance with Virgin Islands law and this opinion because the court committed plain error when it relied on Miller's religion to impose a harsher sentence, and it is unclear whether the court would have imposed the same sentence absent its reliance on this impermissible factor.