IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

February 10, 2025 04:09 PM
SCT-Civ-2022-0110
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

GOVERNMENT OF THE VIRGIN ISLANDS )   **S. Ct. Civ. No. 2022-0110**
VIRGIN ISLANDS, on behalf of the Department )   Re: Super. Ct. Civ. No. 079/2021 (STT)
of Labor-Workers' Compensation )
Administration, )
     Appellant/Proposed Intervenor, )
  )
v. )
  )
**ELVIS GEORGE,** )
     Appellees/Plaintiff, )
and )
**MARK LONKSI, and PROPERTY KING, INC.**[1] )
     Appellees/Defendants. )

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Sigrid M. Tejo

Argued: June 13, 2023
Filed: February 10, 2025

Cite as: 2025 VI 6

BEFORE:    **RHYS S. HODGE,** Chief Justice; **MARIA M. CABRET,** Associate Justice; and
           **IVE ARLINGTON SWAN,** Associate Justice.

APPEARANCES:

**Tracy Myers, Esq. (Argued)**
Assistant Attorney General
Virgin Islands Department of Justice
St. Thomas, U.S.V.I.
     *Attorney for Appellant/Proposed*
     *Intervenor*

**Julie G. Evert, Esq. (Argued)**
Law Office of Julie German Evert
St. Thomas, U.S.V.I.
     *Attorney for Appellee/Plaintiff*
     *George Elvis,*

**James L. Hymes, III, Esq. (Argued)**
James L. Hymes, III, P.C.
St. Thomas, U.S.V.I.
     *Attorney for Appellees/Defendants Mark*
     *Lonski and Property King, Inc.*

**Lee J. Rohn, Esq.**
Law Office of Lee J. Rohn and Associates
St. Croix, U.S.V.I.
     *Attorney for Amicus Curiae.*

---

[1] It is unclear whether the correct spelling of PKI's name for is "Property King, Inc." or "Propertyking, Inc." In their joint appellee's brief, Lonksi and PKI used "Property King, Inc." However, in their joint filings in the underlying lawsuit, Lonksi and PKI indicated that the correct spelling of PKI's name is "Propertyking, Inc." and not "Property King, Inc." (J.A. 0049).

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 2 of 27

2025 VI 6

## OPINION OF THE COURT

**CABRET, Associate Justice.**

¶ 1      Appellant Government of the Virgin Islands ("GVI"), on behalf of the Virgin Islands Department of Labor-Workers' Compensation Administration ("VIDOL"), appeals from the November 14, 2022 order of the Superior Court of the Virgin Islands ("Superior Court") in which the Superior Court, *inter alia*, denied GVI's motion for leave to intervene as of right, ordered VIDOL to execute a general release in connection with its workers' compensation lien against Appellee Elvis George ("George"), and directed the disbursement of the third party recovery to pay George's attorney's fees and costs ($6,037.33) first, with the remainder ($10,462.67) to VIDOL to settle its workers' compensation lien.

### I. BACKGROUND

¶ 2      On July 14, 2020, George—while in the course and scope of his employment—sustained injuries when he was struck by a commercial vehicle driven by Appellee Mark Lonski ("Lonski"). Thereafter, George filed a claim for workers' compensation benefits with VIDOL pursuant to the Virgin Islands Workers' Compensation Act and received payments for medical expenses and lost income as the result of the collision.

¶ 3      On February 12, 2021, without advising VIDOL, George—through his counsel—filed a complaint against Lonski and Lonski's employer Appellee Property King, Inc. ("PKI") for damages arising from the July 14, 2020 incident. George alleged, *inter alia*, that Lonski was negligent in the operation of the commercial vehicle within the course and scope of his employment with PKI at the time of collision and that PKI was negligent in the hiring and employment of Lonski.

GVI v. George, et al.                              2025 VI 6
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 3 of 27

¶ 4     During discovery, George produced a letter from VIDOL, dated February 10, 2022, indicating that VIDOL has a workers' compensation lien against George—in the amount of $61,205.27—to secure reimbursement of the expenses incurred by the Workers Compensation Trust Fund because of George's injury.

¶ 5     On May 26, 2022, despite the fact that VIDOL was not added as a party to the case and did not attend a mediation involving the then-named parties that had previously been scheduled,[2] George, Lonski, and PKI completed mediation and successfully resolved their conflict in its entirety.

¶ 6     In July 2022, George's counsel had a telephone conversation with VIDOL Commissioner Gary Molloy regarding the disbursement of the third party recovery under the mediated settlement agreement. VIDOL Assistant Commissioner/Legal Counsel Nesha R. Christian-Hendrickson and VIDOL-Division of Workers' Compensation Division Director Rainia Thomas were also present on the call but did not participate in the conversation. It is undisputed that during the meeting, George's counsel advised VIDOL representatives that she was seeking money from the third party recovery to pay for her attorney's fees and costs and to compensate George, with the remainder being allocated to GVI to settle VIDOL's workers' compensation lien. However, the parties dispute

---

[2] On April 4, 2022, Lonski and PKI filed an informational notice advising the court that the mediation scheduled for March 31, 2022 did not take place because "[VIDOL] has not been made a party Plaintiff in connection with this matter" since VIDOL has "a significant lien" and "[b]y law, this lien must be satisfied first and foremost before any payments are made to Plaintiff." Lonski and PKI indicated that, "[b]ecause of the foregoing, [they] demanded that the attorney for the Plaintiff make the [VIDOL] a party to this case, and to make it a party for the purpose of participating in the mediation to either prove, compromise, or withdraw its lien."

On April 8, 2022, George filed a notice of mediation indicating the mediation was re-scheduled for May 26, 2022. According to the notice's certificate of service, a copy was sent Lonski, PKI, and VIDOL Assistant Commissioner/Legal Counsel Nesha R. Christian-Hendrickson. This appears to be the first time VIDOL was included in a certificate of service in this matter.

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 4 of 27

2025 VI 6

whether George's counsel and VIDOL Commissioner ever reached an agreement regarding the disbursement of the recovery.[3]

¶ 7 Thereafter, per the parties' joint request, the court ordered the third party recovery deposited into the Superior Court registry until issues regarding VIDOL's workers' compensation lien could be resolved. The court also ordered "that the parties, and any other interested party, shall have sixty (60) days from the date hereof to file any legal briefs in support of their position concerning the worker's compensation lien."

¶ 8 On August 5, 2022, GVI, on behalf of VIDOL, filed a motion for leave to intervene as intervenor-plaintiff pursuant to Rule 24(a) of the Virgin Islands Rules of Civil Procedure, claiming that it "has a right pursuant statutory law to recoup monies expended on Workmen's [sic] Compensation claims, before a party may compromise or distribute any proceeds from a third party for injuries arising from workplace injuries for which the Government has expended or paid out funds." On August 8, 2022, GVI filed a notice in response to the court's order in which GVI advised that it "is an interested party with a claim of right to any settlement proceeds in this matter, up to $61,205.27 and accordingly objects to disbursement of those proceeds to any other party."

¶ 9 On September 19, 2022, George filed a request for hearing to determine disbursement of settlement funds. In support of his request, George attached, *inter alia*, a letter from his counsel to

---

[3] Based on the parties' representations in the underlying case and this appeal, it appears that they assumed that VIDOL Commissioner Gary Molloy had the authority to negotiate and consent to George's compromise with the third party tortfeasors. However, at that time, Section 263 specifically stated in relevant part that the Administrator has the authority to negotiate and consent to such compromise, *see infra* note 9, with the "Administrator" being "the person appointed by the board to run the day to day affairs of the Workers' Compensation Administration," 24 V.I.C. § 251. Thus, it is unclear whether VIDOL Commissioner Gary Molloy had such authority. Nevertheless, this Court need not make such determination since it is unnecessary to reach this issue in resolving the appeal.

*GVI v. George, et al.*                                    2025 VI 6
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 5 of 27

VIDOL's Assistant Commissioner/Legal Counsel Nesha R. Christian-Hendrickson, dated September 1, 2022, in which his counsel provided a breakdown of the third party recovery with VIDOL purportedly receiving the balance remaining ($10,462.67) after deduction of her fees ($5,833.33)[4] and expenses ($1,204.00).

¶ 10    On November 9, 2022, George, Lonski, PKI, and GVI appeared before the Superior Court for a hearing on all pending matters. After hearing arguments and testimony,[5] the court took the matter under advisement.

¶ 11    On November 14, 2022, the court entered an order ("November 14, 2022 Order") in which the court found that GVI's motion for leave to intervene was untimely under title 24, section 263 of the Virgin Islands Code because "[VIDOL], while on notice of not only [George's] injury, but this pending matter[,] did nothing to subrogate its claim until August 5, 2022, more than two years after [George's] injury." The court further found that the circumstances here required the exercise of its equity powers to disburse the third party recovery to both VIDOL and George's counsel because "this [was a] situation where [VIDOL], but for [George's] action, would not have received any compensation to replace in the Fund." On these premises, the court, *inter alia*, denied GVI's motion for leave to intervene as of right, ordered VIDOL to execute a general release in connection with its workers' compensation lien against George, and directed the disbursement of the third party recovery to pay George's attorney's fees and costs ($6,037.33) with the remainder ($10,462.67) to VIDOL to settle its workers' compensation lien.

---

[4] In the September 1, 2022 letter, George's attorney indicated that her fees are one-third of the third party recovery ($17,500.00).

[5] VIDOL Commissioner Molloy, VIDOL Assistant Commissioner/Legal Counsel Christian-Hendrickson, and VIDOL-Division of Workers' Compensation Division Director Thomas testified at the hearing.

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 6 of 27

2025 VI 6

¶ 12    On December 5, 2022, GVI filed a timely notice of appeal from the November 14, 2022 Order with this Court. *See* V.I. R. APP. P. 5(a)(1) ("In a civil case in which an appeal is permitted by law as of right from the Superior Court to the Supreme Court, the notice of appeal required by Rule 4 shall be filed with the Clerk of the Supreme Court within 30 days after the date of entry of the judgment or order appealed from; but if the Government of the Virgin Islands or the United States of America or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry."). On June 8, 2023, the Law Offices of Lee J. Rohn and Associates ("Rohn")—with leave of this Court—filed an amicus curiae brief in support of George, Lonski, and PKI. On June 13, 2023, the parties appeared before this Court for oral argument.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

¶ 13    The Revised Organic Act of 1954 provides this Court with appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law. . . ." 48 U.S.C. § 1613a(d). Title 4, section 32(a) of the Virgin Islands Code vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court [of the Virgin Islands], or as otherwise provided by law." 4 V.I.C. § 32(a). An "order that disposes of all claims submitted to the Superior Court [of the Virgin Islands] is considered final for the purposes of appeal." *Jung v. Ruiz*, 59 V.I. 1050, 1057 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)). In its November 14, 2022 Order, the Superior Court considered GVI's motion for leave to intervene on its merits and denied intervention. This ended the litigation on the merits for the intervenor. *See Anthony v. Indep. Ins. Advisors, Inc.*, 56 V.I. 516, 524 (V.I. 2012) ("[T]he denial of a motion to intervene is a final, appealable order.") (quoting *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1179 (3d Cir. 1994)). Additionally,

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 7 of 27

2025 VI 6

the November 14, 2022 Order also resolved all the claims submitted for adjudication in the underlying matter. Hence, it constitutes a final order within the meaning of § 32(a) and, by operation of that statute, conferred jurisdiction on this Court.

¶ 14    Our standard of review in examining the Superior Court's application and construction of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (citing *In re Reynolds*, 60 V.I. 330, 333 (V.I. 2013)). This Court reviews the "Superior Court's denial of a motion to intervene for an abuse of discretion." *In re Q.G.*, 60 V.I. 654, 660 (V.I. 2014) (citing *Anthony*, 56 V.I. at 525). "An abuse of discretion arises only when the decision rests upon a clearly erroneous finding a fact, an errant conclusion of law or an improper application of law to fact." *Streibich v. Underwood*, 74 V.I. 488, 499 (V.I. 2021) (citations omitted). "However, the review in intervention as of right cases is more searching than the normal abuse of discretion standard." *Anthony*, 56 V.I. at 525 (citing *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987)). Nevertheless, the reviewing court should "not upset the [trial] judge's determination unless he [or she] has applied an improper legal standard or reached a decision that we are confident is incorrect." *Anthony*, 56 V.I. at 525 (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 992 (2d Cir. 1984); citing *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987) (Brennan, J., concurring) ("Federal Rule of Civil Procedure 24 distinguishes a permissive intervenor from an intervenor of right by the stake each has in the litigation. The intervenor of right has an interest in the litigation that it cannot fully protect without joining the litigation, while the permissive intervenor does not. Accordingly, a district court has less discretion to limit the participation of an intervenor of right than that of a permissive intervenor.")).

*GVI v. George, et al.*                                    2025 VI 6
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 8 of 27

**B. Overview of Issues**

¶ 15    On appeal,[6] GVI argues that the Superior Court erred in the following ways. First, the Superior Court erred when it denied GVI's motion for leave to intervene as of right to protect VIDOL's interests under title 24, section 263 of the Virgin Islands Code ("Section 263"). Second, GVI contends that the Superior Court erred when it ordered VIDOL to execute a general release in connection with its workers' compensation lien because the Superior Court "forced [VIDOL to] compromise its rights in contravention of the plain language of Section 263" which provides that "only [VIDOL] can choose when or if it will compromise its statutory to repayment." Third, GVI posits that the Superior Court erred in its interpretation of Section 263 because it ordered the disbursement of the third party recovery to both VIDOL and George's counsel "in clear contravention of the plain language of the statute" which requires the disbursement of the entire amount to VIDOL first to satisfy its workers' compensation lien. Finally, GVI argues that the Superior Court erred because its action "to disregard the plain language of Section 263" violated the separation of powers doctrine. Thus, GVI concludes that the November 14, 2022 Order should be vacated and VIDOL should be awarded the entire third party recovery under Section 263.

---

[6] In his appellate brief, GVI listed the following "statement of issues":

I.      Whether the Superior Court erred when it denied the Government's August 5, 2022, Motion for Leave to Intervene under 24 V.I.C. § 263.

II.     Whether the Superior Court erred in ordering the Government to execute a general release associated with the case when under 24 V.I.C. § 263, only the Government may compromise its rights to recover from third party tortfeasors.

III.    Whether the November 14, 2022, Order violates the separation of powers principles inherent in the Revised Organic Act.

IV.     Whether the Superior Court violated the clear and unambiguous language of 24 V.I.C. § 263, which grants first priority of recovery to the Government, when it ordered the Cashier of the Superior Court to release recovery funds to Plaintiff's counsel before ensuring that all sums due the Government were secured.

*GVI v. George, et al.*                                    2025 VI 6
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 9 of 27

¶ 16    In George's appellee's brief as well as in Lonski and PKI's joint appellee's brief, they collectively argue that the Superior Court did not err in any of the ways alleged by GVI. Thus, they conclude that the November 14, 2022 Order should be affirmed.

¶ 17    In its amicus curiae brief, Rohn argues that the Superior Court did not err in ordering the third party recovery to both VIDOL and George's counsel because "an attorney's lien takes priority" since "[i]t is well-settled in almost every jurisdiction, including the Virgin Islands, that an attorney's lien attaches at the commencement of services." After conducting a *Banks* analysis on this issue of first impression, Rohn avers that "the soundest rule for the Virgin Islands would be to adopt the priority of an attorney lien as part of the Virgin Islands common law." To further support her argument, Rohn also references the common fund doctrine and VIDOL's past practice and policy regarding the payment of attorney's fees and costs under Section 263.

### C. Superior Court's Denial of GVI's Motion for Leave to Intervene

¶ 18    We begin our discussion by turning first to GVI's argument that the Superior Court erred when it denied GVI's motion for leave to intervene as of right. If the Superior Court was correct in denying the motion, then GVI is not a party in the underlying litigation and this Court's jurisdiction over nonparty GVI's remaining issues on appeal evaporates.[7] Alternatively, if the Superior Court erred, then this Court has jurisdiction to correct the error and address the remaining issues.

---

[7] GVI on behalf of VIDOL—as a nonparty—can certainly appeal the Superior Court's order ordering VIDOL to execute a general release in connection with its workers' compensation lien. *Cf. Sam's Food Distribs., Inc. v. NNA&O, LLC*, 73 V.I. 453, 462 (V.I. 2020) ("Therefore, because the Superior Court never gained personal jurisdiction over nonparty Hector Gonzalez and Defendant SDI, the orders purportedly applying to them are void.").

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 10 of 27

2025 VI 6

¶ 19    In ruling on a motion to intervene under Rule 24(a) of the Virgin Islands Rules of Civil

Procedure, the Superior Court must determine whether the movant has established that "(1) the

application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3)

the interest may be affected or impaired, as a practical matter[,] by the disposition of the action;

and (4) the interest is not adequately represented by an existing party in the litigation." *In re Q.G.*,

60 V.I. at 661 (quoting *Anthony*, 56 V.I. at 526 (citing *Harris v. Pernsley*, 820 F.2d 592, 596 (3d

Cir. 1987))).[8] The movant has the burden of persuading the court that each element is met. *Anthony*,

56 V.I. at 526. All four requirements must be met to be eligible for intervention as of right. *Id.*

> In *Anthony*, this Court outlined the standard of review regarding the timeliness issue:
>
> > The determination of timeliness is a review of the totality of the circumstances. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). A court should be reluctant to refuse a motion to intervene by right solely due to untimeliness, given the important interest an otherwise-eligible intervenor by right would be denied. *Id.* In ruling on the timeliness of a motion to intervene as of right, the Court of Appeals for the Third Circuit has instructed that three factors must be considered: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay. *Id.*
> >
> > "The mere passage of time . . . does not render an application untimely." *Id.* Instead, "the critical inquiry is: what proceedings of substance on the merits have occurred?" *Id.* The focus on the proceedings rather than the time is due to "the stage of the proceeding [being] inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." *Id.* at 370.

---

[8] In *In re Q.G.*, this Court addressed Rule 24(a)(2) of the Federal Rules of Civil Procedure. Given that the local Rule 24(a)(2) mirrors its federal counterpart, the standard delineated under the federal rule is persuasive when local Rule 24(a)(2) is construed and applied. *See, e.g., Browne v. People*, 74 V.I. 601, 613 (V.I. 2021) (concluding that where a Virgin Islands court rule "is identical to its federal counterpart," federal opinions construing and applying the federal rule are "of inherently persuasive, although not necessarily compelling, force" when construing and applying the Virgin Islands' local rule) (quoting *State v. Fuller*, 374 N.W.2d 722, 727 (Minn. 1985) and citing *People v. Ventura*, 2014 V.I. LEXIS 53, at *56 (V.I. Super. Ct. July 25, 2014)); *Yearwood Enterprises, Inc. v. Antilles Gas Corp.*, 69 V.I. 863, 869 (V.I. 2018) (observing that the Court "is mindful that decisions of federal courts interpreting a rule of federal procedure represent persuasive rather than binding authority in the context of th[e] . . . interpretation of an identical Virgin Islands rule").

GVI v. George, et al.                              2025 VI 6
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 11 of 27

56 V.I. at 527-28 (cleaned up).

¶ 20     The Superior Court determined that GVI's motion for leave to intervene was untimely

because VIDOL, "while on notice of not only Plaintiff's injury, but this pending matter[,] did

nothing to subrogate its claim until August 5, 2022, more than two years after Plaintiff's injury"

which purportedly violated Section 263's two-year statute of limitation.[9] The Superior Court did

not consider (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and

(3) the reason for the delay. *Id.* at 527.

¶ 21     Here, while it is true that the parties had already completed discovery and mediation, the

case was still ongoing when GVI filed its motion. The litigation had not reached its final stage with

the entry of a final order, and it was not the eve of and/or beginning of trial. *See id.* at 528 (noting

that "the later in the proceedings the motion comes, the more compelling the justification for that

delay must be"). In its motion, GVI indicated that "[t]hose filings, on or about August 3, 2022,

made clear that the Government's interests are at risk and are 'no longer being adequately

_____

[9] The Superior Court referenced the following portion of Section 263 as it existed at the time:

> When an injured workman or employee, or his beneficiaries in case of death, may be
> entitled to institute an action for damages against a third person in cases where the Workers
> Compensation Trust Fund, in accordance with the terms of this chapter, is obliged to
> compensate in any manner or to furnish treatment, the **Administrator shall subrogate**
> **himself to the rights of the workman or employee or of his beneficiaries, and may**
> **institute proceedings against such third person in the name of the injured workman**
> **or employee or of his beneficiaries, within two years following the date of the injury,**
> and any sum which as a result of the action, or by virtue of a judicial compromise, may be
> obtained in excess of the expenses incurred in the case shall be delivered to the injured
> workman or employee or to his beneficiaries entitled thereto. . . .

> Nov. 14, 2022 Order (emphasis in original).

However, the two-year limitation in Section 263 is not applicable in this instance where
George—not VIDOL—instituted the third party action. Given that George already filed suit
against the third party tortfeasors, there was no reason for VIDOL to simultaneously file a separate
suit against the same third party tortfeasors.

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 12 of 27

2025 VI 6

represented by the current parties.'" A review of the record reveals that on August 2, 2022, George filed a motion to interplead the third party recovery into the Superior Court registry due to his disagreement with GVI regarding the disbursement of the recovery—namely, GVI believes that the entire recovery should be used to settle VIDOL's lien, while George believes that the recovery should be used to pay his attorney's fees and costs first, with the remainder to settle VIDOL's lien.

¶ 22     Prior to their disagreement, George and VIDOL's interests were aligned: they both wanted to collect money from the third party tortfeasors. As such, there was no need for GVI to intervene on behalf of VIDOL until it was clear that VIDOL's interest diverged from George's interest. Thus, GVI's motion was timely since it was filed on August 5, 2022, merely three days after George filed its August 2, 2022 motion which made it clear to GVI that it needed to intervene to protect its interest.

¶ 23     Turning to the remaining *Anthony* factors, VIDOL clearly has sufficient interest in the litigation under Section 263 to recoup the money it paid to George under the Act, and it is clear on this record that VIDOL's interest would be impaired by the disposition of the action without its involvement. In addition, as noted above, VIDOL's interest was no longer adequately represented by George upon their disagreement regarding disbursement.

¶ 24     Because GVI met its burden of establishing all four *Anthony* factors, the Superior Court erred in denying GVI's motion for leave to intervene and we therefore reverse that ruling. In this instance, vacating and remanding for the Superior Court to correct its error to allow GVI to intervene "would serve absolutely no purpose other than [to impose] additional expense and delay," since the Superior Court would be asked to make the same legal determination based on the same evidence and arguments—with the only difference being GVI's status changed from a nonparty to an intervenor-plaintiff—and thus make the same rulings as it did in the November 14,

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 13 of 27

2025 VI 6

2022 Order regarding the disbursement of the third party recovery. *See Mahabir v. Heirs of George*, 63 V.I. 651, 666 (V.I. 2015) (quoting *Hansen v. O'Reilly*, 62 V.I. 494, 511 (V.I. 2015)). We decline to do so here in the interest of judicial economy. *See Mahabir*, 63 V.I. at 666 (citations omitted); *see also, Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 575 (V.I. 2015) (citations omitted). Instead, this Court will address GVI's remaining issues on appeal.

### D. Superior Court's Interpretation of Section 263

¶ 25    GVI argues that the Superior Court erred in its interpretation of Section 263 because it directed the disbursement of the third party recovery to pay George's attorney's fees and costs first with the remainder to VIDOL to settle its workers' compensation lien, and further contends that the Superior Court wrongly forced VIDOL to compromise its rights by ordering VIDOL to execute a general release in connection with its lien.[10]

¶ 26    "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning." *Miller v. People*, 67 V.I. 827, 844 (V.I. 2017) (citations omitted). It is well settled that when "the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (citations omitted); *see Thomas v. People*, 69 V.I. 913, 925 (V.I. 2018) ("[B]ecause

---

[10] A closer look of GVI's argument reveals that it is not arguing that Superior Court erred in ordering VIDOL to execute a general release per se but that the Superior Court erred in "forc[ing] [VIDOL to] compromise its rights in contravention of the plain language of Section 263" by directing the disbursement of the third party recovery to pay George's legal fees first with the remainder to VIDOL to settle its workers' compensation lien. (Appellant's Br. 21).

At oral argument, GVI's counsel advised that it was not concerned with George's compromise with the third party tortfeasors to settle the matter for $17,500.00 but only concerned with George's proposed disbursement of the recovery under Section 263.

Thus, this argument goes to the issue of Superior Court's statutory interpretation of disbursement under Section 263.

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 14 of 27

2025 VI 6

'the statutory language [of 14 V.I.C. § 2101(a)] is plain and unambiguous, no further interpretation is required.'") (citation omitted). "We thus begin and end our inquiry with the text, giving each word its 'ordinary, contemporary, common meaning,'" *Thomas*, 69 V.I. at 923 (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (quoting *Walters v. Metropolitan Ed. Enterprises, Inc.*, 519 U.S. 202, 207 (1997) (internal quotation marks omitted)), because "[w]ords and phrases [of a statute] shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42.

¶ 27    "Statutory language is ambiguous when it is susceptible to more than one interpretation." *One St. Peter, LLC v. Bd. of Land Use Appeals*, 67 V.I. 920, 924 (V.I. 2017). If statutory language is ambiguous, "we will proceed to examine the legislative history of the statute and its purpose to ascertain if [a proposed] interpretation was within the legislature's intent," *id.*, at 926 (quoting *Sonson v. People*, 59 V.I. 590, 598 (V.I. 2013)), but "remain mindful that '[a] statute should not be construed and applied in such a way that would result in injustice or absurd consequences.'" *One St. Peter, LLC*, 67 V.I. at 926 (quoting *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) (citation omitted); *see V.I. Narcotics Strike Force v. Gov't of the V.I. Pub. Emples. Rels. Bd.*, 60 V.I. 204, 214 n.7 (V.I. 2013) (observing that in the statutory construction context, an "absurd result" refers to an interpretation of a statute that would be "clearly inconsistent with the Legislature's intent" and finding that an interpretation of a statute that would "undermin[e] the entire regulatory regime established in" a chapter of a title of the Virgin Islands Code would produce an absurd result) (citing *Gilbert*, 52 V.I. at 365). Interpretations that are unjust or lead to absurd results must be avoided because they are inconsistent with legislative intent. . . . An interpretation that renders a statute nonsensical or superfluous, or that defies rationality, is absurd." *Dupigny v. Tyson*, 66 V.I. 434, 440 (V.I. 2017). The United States Supreme Court has instructed that statutory interpretation

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 15 of 27

2025 VI 6

requires the court to "look to the statute's language, structure, subject matter, context, and history — factors that typically help courts determine the statute's objectives and thereby illuminate its text." *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) (citations omitted); *see Ottley v. Estate of Bell*, 61 V.I. 480, 493 (V.I. 2014) (we must look to "the context surrounding each statute" to determine the legislative intent).

### 1. Section 263 of the Virgin Islands Workers' Compensation Act

¶ 28 The Virgin Islands Workers' Compensation Act ("Act"), 24 V.I.C. § 250 et seq., was enacted in the public's interest "to expeditiously compensate injury or disease which arises out of and in the course of employment without regard to the negligence of the employee or employer." 24 V.I.C. § 250. Section 263 governs instances where the injured employee seeks both compensation under the Act and damages from the third party responsible for his injury. More specifically, Section 263 sets forth the parameters in which the injured employee may initiate action or compromise with third party tortfeasors and VIDOL's right of subrogation thereto.[11] In

---

[11] For clarity and convenience, Section 263 is reproduced in its entirety below. In early 2024, the Virgin Islands Legislature amended the Act by "transferring the administration of the Government Insurance Fund from the Commissioner of the Virgin Islands Department of Finance to the Commissioner of Virgin Islands Department of Labor and amending various sections of title 24 Virgin Islands Code, chapter 11 to facilitate better recovery for injury or disease that arises out of and in the course of employment in the Virgin Islands under the Workers' Compensation Administration, and to ensure that workers entitled to Workers' Compensation benefits receive medical coverage, rehabilitation services, and disability compensation without undue delay by merging the benefits and payment components of the Workers' Compensation Insurance Program." *See* Act 8859 (V.I. Reg. Sess. 2024). Under Act 8859, the only amendments to Section 263 were: "Government Insurance Fund" was replaced with "Workers' Compensation Trust Fund" and "Administrator" was replaced with "Director" with the Director being the "person appointed by the Commissioner of Labor to administer the operations of the Workers Compensation Administration." Id. Given that these amendments did not change the substance of Section 263, this Court will refer to the current language of Section 263:

§ 263. Liability of third persons; subrogation

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 16 of 27

2025 VI 6

In cases where the injury, the occupational disease or the death entitling the workman or employee or his beneficiaries to compensation in accordance with this chapter has been cause under circumstances making third persons responsible for such injury, disease or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third person responsible for said injury, disease, or death within two years following the date of the injury. The Director may subrogate himself to the rights of the workman or employee or his beneficiaries to institute the same action in the following manner:

When an injured workman or employee, or his beneficiaries in case of death, may be entitled to institute an action for damages against a third person in cases where the Workers Compensation Trust Fund, in accordance with the terms of this chapter, is obliged to compensate in any manner or to furnish treatment, the Director shall subrogate himself to the rights of the workman or employee or of his beneficiaries, and may institute proceedings against such third person in the name of the injured workman or employee or of his beneficiaries, within two years following the date of the injury, and any sum which as a result of the action, or by virtue of a judicial compromise, may be obtained in excess of the expenses incurred in the case shall be delivered to the injured workman or employee or to his beneficiaries entitled thereto. The workman or employee or his beneficiaries shall be parties in every proceeding instituted by the Director under the provisions or this section, and it shall be the duty of the Director to serve written notice on them of such proceedings within five days after the action is instituted.

The injured workman or employee or his beneficiaries may not institute any action, nor may compromise any right of action they may have against the third person responsible for the damages, unless the Director is a party to the action or agrees to the compromise, but the failure to join the Director shall not deprive the courts of jurisdiction over the claim or otherwise result in dismissal of the claim, so long as the injured worker or employee acknowledges that all sums due the Workers Compensation Trust Fund are secured by any recovery.

No compromise between the injured workman or employee, or his beneficiaries in case of death, and the third person responsible shall be valid or effective in law unless the expenses incurred by the Workers Compensation Trust Fund in the case are first paid. No judgment shall be entered in actions of this nature and no compromise whatsoever as to the rights of parties to said actions shall be approved, without making express reserve of the rights of the Workers Compensation Trust Fund to reimbursement of all expenses incurred. The clerk of the court taking cognizance of any claim of the above-described nature, shall notify the Director of any order entered by the case, as well as the final deposition thereof.

The Director may compromise as to his rights against a third party responsible for the damages. No such extrajudicial compromise, however, shall affect the rights of the workman or employee, or of his beneficiaries, without their express consent and approval.

Any sum obtained by the Director through the means provided in this section shall be covered into the Workers Compensation Trust Fund.

*GVI v. George, et al.*                                      2025 VI 6
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 17 of 27

other words, Section 263 provides VIDOL "with subrogation interests to insure that the [Workers

Compensation Trust] Fund is reimbursed if the employee is awarded damages in a third party suit."

*Shetter v. Amerada Hess Corp.*, 14 F.3d 934, 939 (3d Cir. 1994).

¶ 29    Section 263 works well when the third party recovery is sufficient to cover VIDOL's

workers' compensation lien and the legal fees incurred by the injured employee in obtaining the

recovery. However, Section 263 fails to contemplate and provide adequate guidance for situations

where the recovery is insufficient to cover both, such as here: the third party recovery was

$17,500.00 while VIDOL's workers' compensation lien was $61,205.27 and George's legal fees

were $7,037.33.[12] So, the question arises, how should the third party recovery be disbursed under

Section 263 in the scenario where VIDOL's lien exceeds the recovery?

¶ 30    GVI argues that the statutory language is plain and unambiguous that VIDOL "is entitled

to disbursement first, absent any agreement from [VIDOL] otherwise." Thus, GVI concludes

that—since there was no agreement from VIDOL—the recovery should be disbursed first to settle

VIDOL's workers compensation lien. Given that the lien exceeds the recovery, this would leave

no money on the table to pay George's legal fees.

¶ 31    On the contrary, George, Lonski, and PKI argue that the statutory language is plain and

unambiguous in providing that VIDOL is allowed to compromise the amount of its workers'

compensation lien and has done so in its past practice and policy. Additionally, they pointed out

that VIDOL did nothing to aid George or his counsel in obtaining the third party recovery. Thus,

they contend that the recovery should be disbursed to pay George's legal fees first with the

remainder to VIDOL to settle its workers' compensation lien.

---

[12] *See supra* ¶ 9.

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 18 of 27

2025 VI 6

## 2. Statutory Interpretation of Section 263

¶ 32    Here, the parties do not dispute that: (i) George received compensation under the Act; (ii) George, through a compromise of his tort claim against the third party tortfeasor, was awarded damages in his third party action; and (iii) VIDOL was not a party to George's third party action and did not agree to the compromise. Under these set of facts, the language of Section 263 is clear that the compromise between George and the third party tortfeasor is not "valid or effective in law" unless the Workers Compensation Trust Fund is reimbursed first from George's recovery in the third party action. 24 V.I.C. § 263 ("The injured workman or employee or his beneficiaries may not institute any action, nor may compromise any right of action they may have against the third person responsible for the damages, unless the Director is a party to the action or agrees to the compromise, but the failure to join the Director shall not deprive the courts of jurisdiction over the claim or otherwise result in dismissal of the claim, so long as the injured worker or employee acknowledges that all sums due the Workers Compensation Trust Fund are secured by any recovery. No compromise between the injured workman or employee, or his beneficiaries in case of death, and the third person responsible shall be valid or effective in law unless the expenses incurred by the Workers Compensation Trust Fund in the case are first paid. No judgment shall be entered in actions of this nature and no compromise whatsoever as to the rights of parties to said actions shall be approved, without making express reserve of the rights of the Workers Compensation Trust Fund to reimbursement of all expenses incurred.").

¶ 33    However, Section 263 does not define the term "recovery," and it gives rise to two reasonable interpretations. On one hand, recovery could signify gross recovery, which means that VIDOL is entitled to a first claim on the whole third party recovery amount—here, $17,500. On the other hand, recovery could signify net recovery, which means that VIDOL would be entitled

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 19 of 27

2025 VI 6

to a first claim on the net recovery, after the costs of obtaining it are deducted—here, $10,462.67.

Section 263 fails to select between these two alternatives: whether the recovery to which VIDOL

is entitled to is every cent the third party tortfeasor paid (gross recovery), or the money remaining

after deduction of the costs to obtain the recovery (net recovery). *Cf. US Airways, Inc. v.

McCutchen*, 569 U.S. 88, 103 (2013) (holding that the employee's health benefits plan's allocation

formula—"first claim on the recovery goes to US Airways"—could apply to gross recovery or

"true recovery, after the costs of obtaining it deducted" since the plan's terms failed to clarify).

Thus, the term "recovery" is ambiguous, and this Court is obligated to resolve that ambiguity by

"examin[ing] the legislative history of the statute and its purpose to ascertain if [a proposed]

interpretation was within the legislature's intent." *Id.*, 67 V.I. at 924, 926 (citations omitted).

¶ 34    The Virgin Islands Legislature made it abundantly clear that the Act was enacted to ensure

adequate funds in the Workers Compensation Trust Fund to guarantee prompt compensation to

covered employees to help them meet their essential economic needs. *See* Workmen's

Compensation Ordinance app. Dec. 5, 1940 ("Section 3. Every employer shall pay compensation

as hereinafter specified for the disability or death of an employee resulting from a personal injury

sustained while in the performance of his duty, irrespective of fault as a cause of the injury or

death. . . . Section 7. Every employer shall secure the payment of compensation under this

Ordinance by insuring with any insurance company licensed to do business in the Municipality, or

by posting bond or other security with the Commissioner of Finance, acceptable to him, in such

amount as the compensation Commission may require."); *see also, Carmona v. De Jongh*, 157 F.

Supp. 540, 542 (D.V.I. 1958) ("It is thus to be seen that the intent of the Act is to provide

compulsory Government insurance for the protection of all employees covered by the Act. Being

remedial in nature the Act must be given a liberal construction in favor of the employees it seeks

GVI v. George, et al.
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 20 of 27

2025 VI 6

to protect.") (citing 50 Am. Jur. *Statutes* § 392; 58 Am. Jur. *Workmen's Compensation* § 27; *Industrial Commission of Wisconsin v. McCartin*, 330 U.S. 622 (1947); *Baltimore & Philadelphia Steamboat Co. v. Norton*, 284 U.S. 408 (1932)); Act 6033 (V.I. Reg. Sess. 1994) (Adding a new Section 250 to read as follows: "Section 250. Legislative Findings (a) The Legislature of the Virgin Islands hereby finds and declares that the inability of common-law rights and remedies in redressing injuries received by workers has given rise to the need for Worker's Compensation legislation that will afford expeditious compensation to employees or their dependents without regard to fault or negligence of employer or employee . . . .")

¶ 35    It follows that the purpose of Section 263 is to protect VIDOL's subrogation rights to ensure that the Workers Compensation Trust Fund is reimbursed from any third party recovery obtained by the injured employee to keep the fund "alive" so that VIDOL can continue carry out the spirit and purpose of the Act. *See* 24 V.I.C. § 263, Revision Notes ("Section is entirely rewritten, on advice of the Code Advisory Committee, to provide in greater detail for the liability of third parties and to provide for the subrogation of the Commissioner to the rights of the workman or employee where the government has incurred expenses. The section as so rewritten is patterned after 11 Laws of Puerto Rico Annotated § 32."); *see also, Shetter*, 14 F.3d at 939 ("The purpose of § 263 is 'to provide for subrogation by the Commissioner in cases where the injured employee seeks both compensation under the statute and damages from a third party tort-feasor.'") (quoting *Ayala v. Marshall*, 6 V.I. 615, 618 (Mun. Ct. 1968); *Cf.* Act No. 3662 (V.I. Reg. Sess. 1974) (noting that "it was only the intent of the Legislature to protect the Commissioner of Labor's right of subrogation and to afford his Department sufficient time in which to fully investigate any compensation case before it"). The rationale for VIDOL's subrogation rights appears to be threefold: to prevent the employee from double recovery for the same injury, to ensure that the Workers Compensation

*GVI v. George, et al.*                    2025 VI 6
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 21 of 27

Trust Fund is not compelled to make compensation payments made necessary by the negligence of a third party tortfeasor, and to prevent the third party tortfeasor from escaping liability of his negligence. When viewed against the backdrop of the Act, it is to the benefit of VIDOL, the employer, the employee—present and future—that through subrogation, VIDOL can replenish the Workers Compensation Trust Fund by seeking reimbursement from the third party recoveries.

¶ 36    If we were to interpret Section 263 as GVI argues, to mean that VIDOL is entitled to a first claim against the gross recovery—i.e., every cent the third party tortfeasor paid—then the injured employee could end up worse by pursuing a third party claim. Here, such an interpretation would mean that not only did George and his counsel not receive any money for their efforts in obtaining the third party recovery, but George could potentially be liable for his legal fees.[13] In effect, George—and his counsel—were paying to serve as VIDOL's collection agent against the third party tortfeasors while VIDOL would take the fruits without contributing anything to that labor. This, in turn, means that employees like George will, in the future, be less likely to pursue a third party claim and leave the burden of collection against third party tortfeasors mainly on VIDOL. In other words, under GVI's interpretation, unless VIDOL uses its own counsel to expend time and energy to pursue every third party claim in hope of recovery, the Workers Compensation Trust Fund will not likely be reimbursed and this could lead to depletion of funds available for future claims. As GVI's counsel made clear at oral argument, the Workers Compensation Trust Fund is not limitless, in fact, it "is in the red." Thus, we doubt that this is the result that the Virgin

---

[13] At oral argument, George's counsel advised that she has a contingency fee agreement with George. Arguably, George's counsel can sue George for legal fees since there was third party recovery. Additionally, the parties' mediated settlement agreement expressly specified that "[e]ach party shall bear its own costs, expense and attorneys' fees."

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 22 of 27

2025 VI 6

Islands Legislature intended in enacting Section 263 because it would undermine the goal of reimbursing the Workers Compensation Trust Fund for compensation payments made necessary by third party tortfeasors.

¶ 37    On the other hand, if we interpret Section 263 to mean that VIDOL is entitled to a first claim against the net recovery—i.e., the money remaining after deduction of the costs to obtain the recovery—then the injured employee could pursue a third party claim with representation of counsel without fear of being made worse by facing potential liability for legal fees since his counsel is compensated from the recovery. This, in turn, means that it is more likely for future injured employees to pursue a third party claim. And ultimately, VIDOL benefits from this scenario because, pursuant to its subrogation rights under Section 263, VIDOL is entitled to a claim of any third party recovery the employee obtains regardless of its participation and involvement.

¶ 38    In comparison, it is certainly more advantageous to VIDOL, in terms of economy and efficiency, to not only share the burden of collections against third party tortfeasors with the injured employee but to encourage the employee to do so with counsel in hope of getting the most favorable result. The facts of the instant case illustrate this point. George filed suit against the third party tortfeasor and recovered $17,500; VIDOL—without expending any time or energy—is entitled to a claim against the recovery. Whereas, had George not pursued the third party claim, then VIDOL would have recovered nothing in this case because it did not file suit on behalf of George within the two-year limitation. So, unless VIDOL expends its own resources to file suit within the two-year limitation, there is no recovery to reimburse the Workers Compensation Trust fund in this matter. At the end of the day, especially when considered in the aggregate, VIDOL would surely achieve considerable advantage by not taking on the sole burden of collections against third party tortfeasors.

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 23 of 27

2025 VI 6

¶ 39    Thus, the prospect of generating results that deter or prevent the injured employee from pursuing a third party claim militates against interpreting Section 263 to mean that VIDOL is entitled to a first claim against the gross recovery. Such an interpretation would be inconsistent with legislative intent and must be avoided. *See V.I. Narcotics Strike Force*, 60 V.I. at 214 n.7 (citation omitted); *see also, Dupigny*, 66 V.I. at 440. Conversely, by interpreting Section 263 to mean that VIDOL is entitled to a first claim against the net recovery, the result is consistent with Section 263's purpose to replenish the Workers Compensation Trust Fund from third party recoveries and the overarching purpose of the Act to aid injured employees. When the next injured employee comes along, he is more likely to pursue his third party claim with the help of counsel, and for such effort, the Workers Compensation Trust Fund is more likely to be reimbursed—in whole or in part—from the third party tortfeasor without VIDOL expending any resources. In practice, this furthers the interests of VIDOL, the employer, and the employee, because the Workers Compensation Trust Fund is not absorbing a loss that would otherwise fall to the third party tortfeasor and thereby result in money not available to employees covered under the Act. For those reasons, the interpretation that VIDOL is entitled to a first claim against the net recovery under Section 263 is the more reasonable interpretation consistent with the legislative intent and produces a more coherent statutory scheme.[14]

¶ 40    In the November 14, 2022 Order, the Superior Court did not reach the issue of interpreting the term "recovery" in Section 263. Nevertheless, despite relying upon the wrong

---

[14] Given this Court's resolution based on the statutory construction of the term "recovery," we need not reach the issues raised relating to the validity and priority of an attorney's lien and the common fund doctrine at common law.

*GVI v. George, et al.*        2025 VI 6
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 24 of 27

reasoning,[15] the Superior Court did not err in directing the disbursement of the third party recovery

to pay George's legal fees first with the remainder to GVI to settle VIDOL's workers' compensation

lien and did not err in ordering VIDOL to execute a general release in connection with its lien. *See*

*Antilles School* v. *Lembach*, 64 V.I. 400, 438 n.23 (2016) ("It is well established that, under the

'right result, wrong reason' doctrine, where the record otherwise supports the trial court's

judgment, an appellate court may affirm that judgment for reasons other than those relied upon by

the trial court, even if the trial court's reasons are erroneous.") (citations omitted). Given this

---

[15] In the Superior Court's November 14, 2022 Order, the court explained that, given the circumstances in this matter, equity required the disbursement of the third party recovery to both VIDOL and George's attorney. More specifically, the court pointed out:

> The settlement proposed by Plaintiff would result in the WCA and the Government Insurance Fund receiving Ten Thousand Four Hundred Sixty-Two Dollars and Sixty-Seven Cents ($10,462.67), Four Hundred Dollars ($400) more than if the WCA had initiated an action against Defendants. While it is the policy of the Commissioner to ensure that the Government Insurance Fund is reimbursed for all funds expended so that the funds are available for other recipients, this is situation where the Department of Labor, but for Plaintiff's action, would not have received any compensation to replace in the Fund. The Court further finds that the Commissioner is vested with the discretionary authority to enter into compromise agreements without violating the Code, and in fact, it is the practice and procedure of many Government agencies to do so, in order to collect monies that it due, i.e., property tax amnesties and income tax extensions, to name a few.

However, a court's equitable powers must be exercised within the framework established by the Virgin Islands Legislature deliberately expressed in legislation. *See United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496 (2001) ("[W]hen district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise."); *see also, 3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 554 (V.I. 2015) (quoting *Cacciamani & Rover Corp. v. Banco Popular*, 61 V.I. 247, 252 n3 (V.I. 2014)); *see also, United States v. Lane-Labs-USA, Inc.*, 427 F.3d 219, 235 (3rd Cir. 2005) (explaining that a "clear and valid legislative command" supersedes a court's equitable powers and courts lack latitude to ignore such mandates); *I.C.C. v. B&T Transp. Co.*, 613 F.2d 1182, 1185 (1st Cir. 1980) ("The court's equitable powers are limited only by clear statutory language, or by 'necessary and inescapable inference' from statutory language to the contrary.").

Section 263 expressly provides VIDOL—through the Director—with discretion to compromise its rights. Thus, the Superior Court, by exercising its equity powers and ordering VIDOL to compromise its rights, essentially took away VIDOL's discretion in contravention of Section 263.

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 25 of 27

2025 VI 6

Court's clarification of the term "recovery" in Section 263, the Superior Court's order requiring VIDOL to execute a general release to receive its share of the third party recovery does not force VIDOL to compromise any of its rights.[16]

¶ 41 However, we note that the Superior Court ordered the disbursement of $6,037.33 to pay George's counsel for "attorney's fees and expenses" and the disbursement of $10,462.67 to GVI to settle VIDOL's lien.[17] This disbursement calculation set forth in the Superior Court's November 14, 2022 Order does not account for $1,000 of the third party recovery.[18] While it is unclear why the Superior Court ordered the disbursement of $6,037.33 to pay George's counsel for "attorney's fees and expenses," despite George's counsel's indication that she incurred $7,037.33 in "attorney's fees and expenses,"[19] the issue was never raised in this appeal.[20] As such, it is deemed waived. *See* V.I.R.App.P. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal; provided, however, that when the interests of justice so require, the Supreme Court may consider and determine any question not so presented."); *see also,* V.I.R.App.P. 22(m) ("Issues that were (1) not raised or objected to before the Superior Court, (2) raised or objected to but not briefed, or (3) are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal,

---

[16] *See supra* note 10.

[17] It is unclear whether the amount awarded to George's counsel ($6,037.33) was an intentional reduction of the legal fees requested or inadvertent miscalculation. *Rainey v. Hermon,* 55 V.I. 875, 880-81 (V.I. 2011) ("[A]lthough a fee arrangement for legal services is a matter of contract between the client and the attorney, courts will enforce only reasonable attorneys' fees, even if the contract itself is otherwise enforceable.") (internal citations omitted).

[18] $6,037.33 plus $10,462.67 equals to $16,500.00; the third party recovery was $17,500.00.

[19] *See supra* ¶ 9.

[20] In fact, in his appellee's brief, George reiterated, without objection, that the Superior Court awarded $6,037.33 to his counsel for legal fees. (Appellee George's Br. 5, 10)

*GVI v. George, et al.*
S. Ct. Civ. No. 2022-0110
Opinion of the Court
Page 27 of 27

2025 VI 6

party recovery. Thus, as to the November 14, 2022 Order, this Court will reverse the Superior

Court's denial of GVI's motion for leave to intervene as of right, affirm the Superior Court's order

of VIDOL to execute a general release in connection with its lien, vacate portions of the November

14, 2022 Order ordering the disbursement of the third party recovery, and remand this matter to

the Superior Court to allow GVI to intervene on behalf of VIDOL and order the disbursement of

$6,037.33 to pay for George's legal fees first with the remainder $11,462.67 to GVI to settle

VIDOL's lien.

**Dated this 10th day of February, 2025.**

**BY THE COURT:**

_____
**MARIA M. CABRET**
**Associate Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**
By: _____
   **Deputy Clerk II**
Dated: ___2/10/2025___

*Gov't of the V.I. v. George*
S. Ct. Civ. No. 2022-0110
Dissenting Opinion
Page 1 of 17

2025 V.I. 6

IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

February 10, 2025 04:09 PM
SCT-Civ-2022-0110
**VERONICA HANDY, ESQUIRE**
**CLERK OF THE COURT**

**SWAN, Associate Justice, dissenting**

¶44    In its appellate brief, the Government alleges that the Superior Court's November 14, 2022 order dividing settlement proceeds between the Workers Compensation Division of the Department of Labor and the attorney for victim Elvis George disregards the unambiguous language of 24 V.I.C. § 263. Despite the majority's affirmation of the Superior Court's November 14, 2022 order, I respectfully disagree with the majority because the language of the pertinent statute is explicit, unambiguous, and must be enforced accordingly. Irrefutably, an appellate decision that contravenes the plain language of 24 V.I.C. § 263 is error. Therefore, I respectfully dissent.

## FACTS AND PROCEDURAL HISTORY

¶45    To guide the analysis and assist the reader, a few salient facts are helpful. These facts follow. On July 14, 2020, while employed at a Virgin Islands Waste Management Authority ("WMA") worksite on St. John, United States Virgin Islands, Elvis George ("George") sustained various personal injuries because of the negligent operation by Mark Lonski ("Lonski") of a Ford automobile owned by Property King Inc. ("Property King") at the WMA worksite.[1] Subsequently, George's employer, WMA, directed him to the Worker's Compensation Division ("WCD") at the Virgin Islands Department of Labor ("DOL") to seek financial assistance for medical treatment of his injuries. Acknowledging George's personal injuries, WCD disbursed approximately $61,000 to George for his medical treatment. Eventually, George, without informing WCD or DOL, initiated a civil action on February 12, 2021 in Superior Court against Lonski and Property King. Importantly, George initiated the civil case approximately six months after incurring his injuries despite the language of 24 V.I.C.

---

[1] Mark Lonski worked for Property King. He negligently operated one of its vehicles, hit George with the vehicle, and caused numerous injuries to George's torso from striking him with the vehicle.

§ 263 mandating a two-year statute of limitations in which WCD through DOL could have initiated a claim on George's behalf to recover damages against Lonski and Property King for the injuries George sustained which resulted from their negligence.

¶46     On January 18, 2022, George's counsel contacted WCD to request information about liens WCD may have had on payments or monetary settlements George received from the defendants for his injuries. In a February 10, 2022 letter, WCD informed George's counsel that it had expended more than $61,000 to George to obtain medical treatment for the injuries he sustained in the July 14, 2020 workplace accident. The letter further instructed George's counsel to submit to WCD a general release form together with a five-dollar notary registration fee. In a July 2022 telephonic meeting, George's counsel conversed with DOL Commissioner Gary Molloy, DOL Assistant Commissioner and Legal Counsel Nesha R. Christian-Hendrickson, and Workers Compensation Director Rainia Thomas. Although there is some disagreement concerning whether a mutual accord regarding the payment of George's lawyer's attorney fees was established during the July 2022 telephone meeting, the record clearly reveals that DOL and WCD were informed of the strong likelihood of a settlement in George's case and the desire of George's attorney to be fully compensated for the resources she expended in the case. Finally, on August 5, 2022, WCD filed a motion to intervene in George's civil suit against Lonski and Property King because, considering the funds WCD disbursed to George to obtain medical treatment for his workplace injuries, WCD has a statutory right to recover settlement proceeds from any agreement between George and the defendants for the injuries the defendants' negligent actions inflicted on George. Critically, before WCD's August 5, 2022 motion to intervene in this case, the record fails to disclose that George ever attempted to join WCD or DOL as parties to his suit despite the clear, unambiguous language of section 263 mandating him to do so.

¶47    On September 1, 2022, George's counsel mailed a letter to DOL Assistant Commissioner and Legal Counsel Nesha R. Christian-Hendrickson. The letter stated that George's suit had settled for $17,500 and WCD would receive $10,462.67, the remaining settlement amount after paying George's counsel attorney's fees.

¶48    In its November 14, 2022 order, the Superior Court stated that it granted George's motion to divide settlement proceeds between WCD and George's attorney because equity demanded that result and WCD had historically agreed to suspend its monetary recoupment from trial damages or settlement proceeds in other cases. Therefore, in this case, the Superior Court essentially deduced that it was inequitable for WCD to recover all the settlement proceeds. Despite the Superior Court's endeavor at equity, the court's November 14, 2022 order undoubtedly contravenes the unambiguous language of section 263 and ignores the numerous occasions that George's counsel should have evaluated his financial condition before accepting his case.

## DISCUSSION

In cases where the injury, the occupational disease or the death entitling the workman or employee or his beneficiaries to compensation in accordance with this chapter has been cause[d] under circumstances making third persons responsible for such injury, disease or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third person responsible for said injury, disease, or death within two years following the date of the injury. The Administrator may subrogate himself to the rights of the workman or employee or his beneficiaries to institute the same action in the following manner:

When an injured workman or employee, or his beneficiaries in case of death, may be entitled to institute an action for damages against a third person in cases where the Government Insurance Fund, in accordance with the terms of this chapter, is obliged to compensate in any manner or to furnish treatment, the Administrator shall subrogate himself to the rights of the workman or employee or of his beneficiaries, and may institute proceedings against such third person in the name of the injured workman or employee or of his beneficiaries, within two years following the date of the injury, and any sum which as a result of the action, or by virtue of a judicial compromise, may be obtained in excess of the expenses incurred in the case shall be delivered to the injured workman or employee or to his beneficiaries entitled thereto. The workman or employee or his beneficiaries shall be parties in every

proceeding instituted by the Administrator under the provisions or this section, and it shall be the duty of the Administrator to serve written notice on them of such proceedings within five days after the action is instituted.

*The injured workman or employee or his beneficiaries may not institute any action, nor may compromise any right of action they may have against the third person responsible for the damages, unless the Administrator is a party to the action or agrees to the compromise,* but the failure to join the Administrator shall not deprive the courts of jurisdiction over the claim or otherwise result in dismissal of the claim, so long as the injured worker or employee acknowledges that all sums due the Government Insurance Fund are secured by any recovery.

*No compromise between the injured workman or employee, or his beneficiaries in case of death, and the third person responsible shall be valid or effective in law unless the expenses incurred by the Government Insurance Fund in the case are first paid. No judgment shall be entered in actions of this nature and no compromise whatsoever as to the rights of parties to said actions shall be approved, without making express reserve of the rights of the Government Insurance Fund to reimbursement of all expenses incurred.* The clerk of the court taking cognizance of any claim of the above-described nature, shall notify the Administrator of any order entered by the case, as well as the final deposition thereof.

The Administrator may compromise as to his rights against a third party responsible for the damages. No such extrajudicial compromise, however, shall affect the rights of the workman or employee, or of his beneficiaries, without their express consent and approval.

Any sum obtained by the Administrator through the means provided in this section shall be covered into the Government Insurance Fund.

24 V.I.C. § 263 (emphasis added).

¶49    It is axiomatic that the first step of statutory interpretation is an examination of the plain language of the statute. Importantly, when a statute's language is clearly unambiguous, a court does not need to perform further analysis to determine the statute's intent. "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *Matter of Adoption of L.O.F*, 62 V.I. 655, 661 (V.I. 2015) (citations omitted). *See People v. Baxter*, 49 V.I. 384, 388-89 (V.I. 2008) ("[T]he United States Supreme Court opined [on] the canons of statutory interpretation and emphatically stated: '[I]n interpreting a statute[,] a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute

are unambiguous, then, the first canon is also the last: judicial inquiry is complete.' . . . No

interpretation by the court is necessary where the terms are plain and unambiguous.") (citing

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)); *United States v. Coss*, 677

F.3d 278, 283 (6th Cir. 2012) ("[T]he 'starting point' for any question of statutory interpretation

'is the language of the statute itself.'") (citations omitted); *United States v. Salazar-Montero*,

520 F.Supp.2d 1079, 1086 (N.D. Iowa 2007) ("This court has, on numerous occasions, pointed

out that the first approach to statutory interpretation is [an evaluation of] the 'plain language'

of the statute in question.") (citations omitted); *United States v. Dawson*, 64 F.4th 1227, 1236

(11th Cir 2023) ("The starting point for statutory interpretation is the language of the statute.")

(citations omitted); *Kane ex rel. U.S. v. Healthfirst, Inc.*, 120 F.Supp.3d 370, 384 (S.D.N.Y.

2015) ("When faced with a question of statutory interpretation, a court's starting point 'is the

statute's plain meaning, if it has one.'") (citations omitted); *Barnhart v. Sigmon Coal Co.*, 534

U.S. 438, 450 (2002) ("The first step is to determine whether the language at issue has a plain

and unambiguous meaning with regard to the particular dispute in the case.") (citations

omitted).

¶50     Importantly, the Virgin Islands Supreme Court has repeatedly opined that it will enforce

a codified statute when it is clear and unambiguous on its face. *See Whyte v. Bockino*, 69 V.I.

749, 754 (V.I. 2018) (explaining that finding a statute is unambiguous ends the statutory

interpretation inquiry and concluding that the plain language of Federal Rule of Civil Procedure

8(c)(1) controlled the court's disposition of that case); *In re Application of Shores*, 59 V.I. 994,

1001 n. 5 (V.I. 2015) (rejecting appellant's argument to interpret Virgin Islands Supreme Court

Rule 201(a)(4) as allowing extended pro hac vice practice because it was unfair to small law

firms, it would lead to absurd results, and it disregarded the plain language of Rule 201(a)(4));

*Cornelius v. Bank of Nova Scotia*, 67 V.I. 806, 822 (V.I. 2017) (stating that the court presumes

the legislature intends all words in a statute to be effective and, therefore, the court must give effect to all the words in a statute considering the plain meaning of the statute's language); *Thomas v. People*, 69 V.I. 913, 923 (V.I. 2018) (observing that "'it is proper to presume that a legislature knows the meaning of words, has used the words of a particular statute advisedly, and has expressed its intent by the words as found in the statute.' . . . This '[C]ourt[ ] must presume that a legislature says in a statute what it means and means in a statute what it says there.' . . . [W]e have likewise observed that 'add[ing] language into ... [a] statute that does not currently appear in it ... is an exercise [courts] cannot undertake under the guise of construing the statute.'. . . Accordingly, because 'the statutory language [of 14 V.I.C. § 2101(a)] is plain and unambiguous, no further interpretation is required.'") (citations omitted).

¶51    However, despite the Virgin Islands Supreme Court's numerous holdings affirming the plain meaning of a statute's text, the Court opts to depart from established precedent and affirm a Superior Court order that clearly contravenes the plain language of 24 V.I.C. § 263. To substantiate its ruling, the majority contends, as did the Superior Court, that equity demands that result. Regardless of the majority's arguments of equity, the plain language of 24 V.I.C § 263 is explicit, concise, and unambiguous. Therefore, the statute demands enforcement as the law of the territory and the intent of the Virgin Islands legislature. Undeniably, neither the Superior Court nor the Supreme Court is empowered to supplant the legislature's clear intent with the court's intent in an attempt at equity. *See RJB Nabisco, Inc. v. United States*, 955 F.2d 1457, 1460 (11th Cir. 1992) ("If th[e] language is unambiguous, the courts must enforce the statute as written absent a clearly expressed legislative intent to the contrary.") (citations omitted); *Ford v. United States*, 989 F.2d 450, 453 (11th Cir. 1993) ("When statutory language is unambiguous[,] a court must enforce the statute as written, absent a clearly expressed legislative intent to the contrary.") (citations omitted); *Pate v. People*, 62 V.I. 271, 321 (V.I.

Super. Ct. 2015) ("'If the language [of a statute] is clear and unambiguous, there is no need to resort to any other rule or [to] statutory construction.' . . . And, unless the disposition required by the text is absurd, the Court must enforce the statute according to its terms."); *State v. Moncayo*, 521 P.3d 120, 124-25 (N.M. 2022) ("[The Plain Meaning R]ule provides that if a state statute is free from ambiguity and the meaning of statutory language is plain, it must be applied as written. . . . Our Supreme Court in *Muqqddin* adopted and applied the guidance on statutory construction provided by the Court's opinion in *Helman*, noting that *Helman* refused to abrogate the plain meaning rule, instead holding that the rule continues to apply where there is no ambiguity in a statute . . .") (citations omitted); *Creswick v. Univ. of South Carolina*, 862 S.E.2d 706, 708 (S.C. 2021) ("If a statute's language is plain, unambiguous, and conveys a clear and definite meaning, there is no need to employ the rules of statutory interpretation, and this Court must apply the statute according to its literal meaning."); *Ledyard v. WMS Gaming, Inc.*, 258 A.3d 1268, 1273 (Conn. 2021) ("It is well settled that we follow the plain meaning rule pursuant to General Statutes § 1-2z in construing statutes 'to ascertain and give effect to the apparent intent of the legislature.'") (citations omitted); *State v. Davis*, 295 A.3d 65, 67 (R.I. 2023) ("In addressing defendant's argument, 'we are guided by the following important axiom: It is a fundamental principle that, when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings'") (citations omitted); *Estate of Naegele v. Khawaja*, No. 21-2000, 2021 WL 5575213, at *4 (10th Cir. Nov. 30, 2021) (unpublished) ("Under New Mexico law, statutory interpretation requires the court to 'look first to the language used and the plain meaning of that language.' . . . 'Under the plain meaning rule, when a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation.'"); *Gibson v. State Farm Mut. Auto. Ins.*, 994 F.3d 182, 187 (3rd Cir. 2021)

(explaining that the Virginia Supreme Court applied the plain meaning rule of statutory interpretation to uphold enforcement of an insurance provision); *Patel v. U.S. Attorney General*, 917 F.3d 1319, 1330 (11th Cir. 2019) (explaining that the plain meaning rule of statutory interpretation and its limited exceptions restrict the policy predilections of judges who are charged with enforcing legislative decrees rather than their independent political perspectives); *compare Phillips Construction, LLC v. Daniels Law Firm, PLLC*, 93 F.Supp.3d 544, 549 (S.D.W.Va. 2015) ("[Significantly,] there are two exceptions to the Plain Meaning Rule. First, this rule does not apply 'when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary.' . . . Second, the Plain Meaning Rule does not apply 'when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense.' . . . 'If either of these exceptions apply, then [the court] can look beyond an unambiguous statute and consult legislative history to divine its meaning.' . . . However, 'the instances in which either of these exceptions to the Plain Meaning Rule apply 'are, and should be, exceptionally rare.'") (citations omitted).

¶52 Specifically, section 263 delineates the rights of both the injured employee who received financial assistance from the Worker's Compensation Fund and the Worker's Compensation Administrator at DOL. In the first paragraph, section 263 concisely states that an injured employee or his beneficiaries may bring a civil action within two years of the date that the employee sustained the injury against the third parties who caused the employee's injuries. However, the first paragraph concludes by stating that the Worker's Compensation Administrator may subrogate himself to the rights of the injured employee or his beneficiaries if the procedures in paragraphs two through five of section 263 are followed.

¶53    Section 263's second paragraph explicates that the Administrator may initiate a civil action within two years of the employee's injury on behalf of the injured employee or his beneficiaries against the third parties who caused the employee's injury if the Worker's Compensation Fund disbursed monetary aid to enable the employee to obtain medical treatment for his injuries. If the action instituted by the Administrator yields a judgment on behalf of the injured employee or the parties settle the action, paragraph two further states that the Administrator will transfer any excess funds to the injured employee once the Worker's Compensation Fund recoups the entire allotment it paid to the injured employee. Paragraph two of section 263 concludes by stating that the injured employee or his beneficiaries must be joined as parties to the Administrator's civil suit and must be given notice of the proceedings within five days of the action being instituted by the Administrator.

¶54    Section 263's third paragraph states that neither the injured employee nor his beneficiaries may initiate a civil action against third parties or accept settlements from third parties without the Administrator being joined as a party to the civil suit or approving the compromise. However, paragraph three also confirms that a civil action filed by the injured employee, or his beneficiaries will not be dismissed simply because the Administrator was not joined as a party to the action if the injured employee understands that the Worker's Compensation Fund is entitled to full repayment from the damages award the injured employee's civil suit produces. Obviously, the injured employee concedes to relinquish his trial damage award because of the monetary aid the Fund disbursed to the employee. Paragraph three of section 236 concludes by stating that any settlement between the injured employee and third parties is invalid and illegal if the Worker's Compensation Fund is not first repaid for all the monetary aid it disbursed to the injured employee. It further invalidates any judgement or

settlement that fails to expressly preserve the Worker's Compensation Fund's right to full repayment. Specifically, the pertinent part of paragraph three states that

> No compromise between the injured workman or employee, or his beneficiaries in case of death, and the third person responsible shall be valid or effective in law unless the expenses incurred by the Government Insurance Fund in the case are first paid. No judgment shall be entered in actions of this nature and no compromise whatsoever as to the rights of parties to said actions shall be approved, without making express reserve of the rights of the Government Insurance Fund to reimbursement of all expenses incurred. The clerk of the court taking cognizance of any claim of the above-described nature, shall notify the Administrator of any order entered by the case, as well as the final deposition thereof.

24 V.I.C. § 263.

¶55 Accordingly, the final clause in paragraph three of section 236 mandates the Clerk of the Superior Court to notify the Administrator of any civil action in which the Worker's Compensation Fund may have an interest in the outcome of a pending case.

¶56 Section 263's fourth paragraph states that the Administrator may settle his claims with the third parties who caused the employee's injury. However, any out-of-court settlement by the Administrator does not preclude the injured employee's right to recover from the third parties that caused his injury, unless the injured employee waives that privilege and consents to the Administrator's settlement agreement with the defendants.

¶57 Section 263's final paragraph states that any sum recovered by the Administrator will be remitted to the Worker's Compensation Fund.

¶58 Here, the injured employee, George, initiated a civil action on February 12, 2021 against Lonski and Lonksi's employer, Property King, for the injuries George sustained at a WMA worksite, because of Lonski's negligent operation of a vehicle owned by Property King. However, before he initiated the civil suit, George received more than $61,000 from WCD for his medical treatment for the injuries he sustained during the July 14, 2020 incident. According to the clear, unambiguous language of section 263, George's entire settlement of $17,500 is

required to be transferred to WCD to reimburse the Worker's Compensation Fund for the sums

paid to George to enable him to obtain medical treatment for his workplace injuries. Any other

conclusion blatantly and deviously ignores the unambiguous language of section 263 and defies

the intent of the Virgin Islands Legislature to replenish the Worker's Compensation Fund[2] with

the settlement award and its proceeds. Finally, it is noteworthy that section 263 makes no

promises for the payment of attorney's fees ahead of WCD's entitlement to the recovery of

funds needed to replenish the Worker's Compensation Fund.

¶59     Specifically, although paragraph one of section 263 states that George was authorized

to file a civil case within two years of receiving his workplace injury, it concludes by stating

that the Worker's Compensation Administrator could subrogate himself to George's rights and

seek judicial redress on his behalf, if the Administrator followed the procedure delineated in

paragraphs two through five of section 263.

¶60     Undeniably, George filed a civil suit against Lonski and Property King on February 12,

2021- approximately six months after incurring his workplace injuries. Therefore, considering

WCD and DOL had a two-year statute of limitations in which to sue Lonski and Property King

on George's behalf, George's actions failed to provide WCD or DOL with sufficient time to

file a civil case on his behalf. Essentially, although not precluded by section 263, George's

actions directly hindered WCD and DOL from seeking judicial redress on his behalf because

courts do not generally allow the simultaneous adjudication of two separate actions that involve

the same issues and parties. *See Miller v. United States Postal Serv.*, 729 F.2d 1033, 1036 (5th

---

[2] It must be noted that the Worker's Compensation Fund is a government program by which injured employees can obtain financial assistance from the government for medical treatment of workplace injuries. The Fund is available to all employees injured on the job. However, the Fund is not limitless. Without replenishment of the Fund from the trial damages or settlement proceeds of those who received financial assistance from it, the Fund's assets will deplete, and injured employees will not have any local recourse from which to obtain financial assistance when they are injured on the job.

Cir. 1984) ("The proper solution to the problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a) of the Federal Rules of Civil Procedure.") (citations omitted); V.I. R CIV. P. 42(a) ("Consolidation. If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.").

¶61     By virtue of disbursing money to George, which enabled him to obtain medical treatment for his workplace injuries, paragraph two of section 263 states that WCD and DOL, through the Worker's Compensation Administrator, could have filed a civil case against Lonski and Property King on George's behalf within two years of George receiving the workplace injury. In that scenario, section 263 requires WCD to join George as a party to the proceedings and give him notice of the matter within an established timeframe. Furthermore, following the recoupment of all the money it paid to George, paragraph two mandates that WCD transfer any monetary remainder to George or his beneficiaries if WCD received a favorable judgement at trial or settled the case. Here, WCD never filed a civil case on George's behalf because George opted to sue Lonski and Property King independent of WCD or DOL.

¶62     Paragraph three of section 263 declares that George should not have initiated a civil case without joining WCD as a party to the action unless George understood that WCD was entitled to full repayment of its disbursed funds from George's case settlement or judgement for his trial damages. It also states that George should not have settled his case without first receiving WCD's approval of the settlement. Critically, George violated both clauses. Notably, had the Superior Court considered either infraction, it would have had sufficient basis to deny George's motion to divide settlement proceeds. First, George sued Lonski and Property King,

but never joined WCD as a party to the action.[3] George seemingly understood that WCD was entitled to full repayment of disbursed funds from his trial damage proceeds because his lawyer contacted WCD on January 18, 2022 to inquire about any liens WCD may have had against potential trial damages or a possible settlement.

¶63     Second, on September 1, 2022, George, through counsel, sent a letter to DOL Assistant Commissioner and Legal Counsel Nesha R. Christian-Hendrickson Commissioner. The letter stated that George's suit had settled for $17,500 and that he would remit the balance, $10,462.67, to WCD after his attorney deducted her fee from the settlement proceeds. Undeniably, accepting a settlement without first obtaining WCD approval obviously and brazenly contradicted the unambiguous language of section 263. Moreover, deducting the attorney's fee from the settlement proceeds was additional error because the explicit language of section 263 states that WCD must first recover all money paid to George before any remainder is transferred to George or his beneficiaries. Therefore, George's actions clearly contravened the explicit language of section 263 and should not be affirmed.

¶64     Additionally, paragraph three unequivocally annuls any settlement or judgement that does not clearly preserve WCD's right to full repayment from trial damages or settlement proceeds for the funds it disbursed to an injured employee before the monetary remainder, if any, is transferred to the injured employee or his beneficiaries. Therefore, not only did George's settlement, which was made without WCD approval, undoubtedly violate the clear language and tenets of section 263, but the method by which George's attorney, the Superior Court, and the majority apportions settlement proceeds or affirms the apportionment of settlement proceeds between George's counsel and WCD certainly contravenes the unambiguous

---

[3] Despite being required to do so by the auspices of section 263, the record fails to reveal that George ever joined WCD as a party to his civil suit.

language of section 263. The statute explicitly requires that the entire settlement be transferred to WCD to replenish the Worker's Compensation Fund for the assistance given to George to obtain his medical treatment for the workplace injuries he sustained on July 14, 2020. Accordingly, the actions of George's attorney are quite perplexing and disconcerting considering a lawyer's function is to zealously represent his or her client by applying established law. However, by deducting her fee from the settlement proceeds, George's lawyer knowingly violated the law by subverting the provisions of section 263 to recover her fee. Equally disconcerting is the Superior Court's holding and the majority's affirmation of it that asserts equity requires splitting settlement proceeds between the parties despite numerous rulings from distinct courts which state that unambiguous statutory language prevails over a court's equitable jurisdiction. *See United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1197 (D.C. Cir. 2005) ("Reading *Porter* in light of [a court's] limited jurisdiction[,] we must not take it as a license to arrogate to ourselves unlimited equitable power. We will not expand upon our equitable jurisdiction if, as here, we are restricted by the statutory language, but may only assume broad equitable powers when the statutory or Constitutional grant of power is equally broad."); *United States v. Lane-Labs-USA, Inc.*, 427 F.3d 219, 235 (3rd Cir. 2005) (explaining that a "clear and valid legislative command" supersedes a court's equitable powers and courts lack latitude to ignore such mandates); *I.C.C. v. B&T Transp. Co.*, 613 F.2d 1182, 1185 (1st Cir. 1980) ("The court's equitable powers are limited only by clear statutory language, or by 'necessary and inescapable inference' from statutory language to the contrary."); *Brown v. Allstate Indemnity Co.*, No. CIV-11-615-L, 2011 WL 13233208, at *2 (D. Okla. Sept. 2, 2011) (unpublished) ("The court does not agree that the clear language in § 1446(b) that a case may not be removed on the basis of diversity jurisdiction more than one year after the action was commenced can be so easily ignored or reinterpreted by the court based on equitable

considerations."); *United States v. Cinergy Corp.*, 582 F.Supp.2d 1055, 1058 (D. Ind. 2008) ("The Supreme Court held that[,] when the district court's equitable jurisdiction is invoked, 'all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction,' unless the statute by 'clear and valid legislative command' or 'necessary and inescapable inference' restricts the court's equitable powers.").

¶65 Lastly, the majority's decision to disregard established precedent concerning unambiguous statutory language creates a debacle over the facial clarity of statutory language that may perpetually cause confusion in this jurisdiction about the importance of statutory interpretation. Therefore, in my opinion, the majority's affirmation of the Superior Court's November 11, 2022 order that divides settlement proceeds between WCD and George's attorney is unfortunately a miscarriage of justice to WCD, DOL, the Worker's Compensation Fund, and the injured local employees who may in the future potentially benefit from the fund if they are injured at work. Because of the majority's holding, an employee injured at work in the future may not be able to benefit from the Worker's Compensation Program, because it lacks sufficient funds to aid injured employees due to settlement proceeds being divided between WCD and plaintiff's counsel despite the clear language of section 263 that mandates all proceeds generated out of the settlement that are subject to WCD liens be used to replenish the Worker's Compensation Fund. Unequivocally, a court's function is to enforce the law as the legislature drafts it. Today, the majority supplants clear legislative intent and spurns its established purpose to enforce laws as the legislature scripts them.[4] Here, section 263 is clear, unambiguous, and its enforcement only yields practical results that will assist all Virgin

---

[4] Courts are permitted to ignore established statutory language if applying the literal language leads to absurd results. *See, e.g., One St. Peter, LLC v. Bd. of Land Use Appeals*, 67 V.I. 920, 927-28 (V.I. 2017) (discussing courts' obligation to avoid interpretation of statutes that produce absurd results); *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) (explaining that "although literal interpretation of a statute is favored, the intention prevails over the letter [of a statute], and thus no statute should be read literally if such a reading is contrary to its objective") (cleaned up; alteration added and citations omitted).

Islanders who are harmed at work by ensuring that such individuals continue to have a monetary pool from which they can obtain financial assistance for workplace injuries.

¶66     As a final point, it is noteworthy that, although section 263 demands the transmission of all settlement proceeds to WCD, a plaintiff's attorney in a worker's compensation case filed by an injured employee is not without remedies to recover her fee. First, a plaintiff's attorney could ascertain the financial status of the injured employee (or potential client) to ensure the injured employee can pay the attorney's fees. Other than in contingency fee cases, this critical assessment must be undertaken by every attorney in every case and the evaluation should not cease simply because the attorney obtains a client with a worker's compensation issue. Second, a plaintiff's attorney could simply follow the steps outlined in section 263 to enable WCD to relinquish its portion of the settlement proceeds. Although WCD has discretion regarding whether it will waive its statutory right to recoup disbursed funds from trial damages or settlement proceeds, WCD, as the Superior Court noted in its November 11, 2022 order, has done so on prior occasions to the detriment of the Worker's Compensation Fund. In this case, despite WCD never unequivocally waiving its statutory right to recover settlement proceeds or trial damages, George's counsel failed to fully satisfy either option perhaps because of the potential financial detriment in not obtaining her fee. Regardless, there is absolutely no need to eviscerate the clarity and facial integrity of section 263 when logic and the statue provide viable alternatives. "[W]e believe the better methodology is to simply look to the statutory language itself." *Rennie v. Hess Oil Virgin Islands Corporation*, 62 V.I. 529, 552 (V.I. 2015); *Middlesex Cnty. Sewage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be [weary] of reading others into it.") (citations omitted); *Gibson*, 994 F.3d at 187 ("When the words of the statute are clear and free from all ambiguity,

the letter of it is not to be disregarded under the pretext of pursuing its spirit.") (citations omitted). Accordingly, I would reverse the Superior Court's November 11, 2022 order dividing the settlement proceeds between WCD and George's counsel and remand the case to the Superior Court with instructions to transfer the entire $17,500 settlement to WCD pursuant to the explicit and expressed mandates of section 263. This result is the only one that comports with the explicit, unambiguous language of the statute. Lastly, attorneys demanding attorney's fees from clients with worker's compensation claims, can obtain redress by successfully importuning the Virgin Islands Legislature to amend section 263 of title 24 of the Virgin Islands Code to provide for attorney's fees in these situations.

## CONCLUSION

¶67    Because the language of section 263 is unambiguous, I would reverse the Superior Court's November 11, 2022 order compelling the division of settlement proceedings between WCD and George's attorney because that order obviously contravenes the statute's precise and explicit language and mandate. Accordingly, I would remand the matter to the Superior Court with instructions to transfer the entire settlement of $17,500 to WCD as section 263 requires.

**Dated this 10th day of February 2025**

**BY THE COURT:**

**IVE ARLINGTON SWAN**
Associate Justice

**ATTEST:**
**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

By: _____
Deputy Clerk II

Date: ___2/10/2025___